JS

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

18 3779

# DESIGNATION FORM

*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: PO Box 562, Philadelphia, PA 19105

Address of Defendant: ______

Place of Accident, Incident or Transaction: Philadelphia

***RELATED CASE, IF ANY:***

Case Number: 18-1320 Judge: Sanchez Date Terminated: 5/23/18

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? Yes ☐ No ☐
2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? Yes ☐ No ☐
3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? Yes ☐ No ☐
4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? Yes ☐ No ☐

I certify that, to my knowledge, the within case ☐ **is** / ☐ **is not** related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 09/04/2018 Daniel McConnell ______

*Attorney-at-Law / Pro Se Plaintiff* *Attorney I.D. # (if applicable)*

**CIVIL: (Place a √ in one category only)**

***A. Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☑ 7. Civil Rights 550
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases *(Please specify):* ______

***B. Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* ______
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases *(Please specify):* ______

## ARBITRATION CERTIFICATION

*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, ______, counsel of record *or* pro se plaintiff, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: ______ ______ ______

*Attorney-at-Law / Pro Se Plaintiff* *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

JS

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| McFadden | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 18 3779 |
| Apple Inc., et. al. | : | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( ☐ )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( ☐ )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( ☐ )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( ☐ )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( ☐ )

(f) Standard Management – Cases that do not fall into any one of the other tracks. **550** ( ☒ )

| | | |
|---|---|---|
| SEP - 4 2018 | Daniel McConnell | |
| **Date** | **Deputy Clerk** | **Attorney for** |
| | | |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

JS

TRULINCS 53960066 - MCFADDEN, LARUE - Unit: PHL-G-N

---

FROM: 53960066
TO:
SUBJECT:
DATE: 07/21/2018 01:37:37 PM

.......................................... UNITED STATES DISTRICT COURT
.......................................... EASTERN DISTRICT OF PENNSYLVANIA

.......... TALLI J. MCFADDEN
( PLAINTIFF)

V.

CIVIL ACTION NO. 18 3779

JURY TRIAL DEMANDED

.......... APPLE INC.

.......... JOANN ( LAST NAME UNKNOWN) APPLE INC. EMPLOYEE

.......... BEST ( NAME UNKNOWN)

.......... SUBPOENAS@APPLE.COM ( NAME UNKNOWN)

.......... INDIVIDUALLY AND OFFICIALLY AS A CORPORATION
(DEFENDANTS)

---

.......... CITY OF PHILADELPHIA

.......... POLICE OFFICER JASON REID # 4415

.......... POLICE OFFICER TIMOTHY MURPHY # 4850

.......... POLICE OFFICER RYAN FLYNN # 2638

.......... POLICE OFFICER BRAIN QUIRPLE # 5989
AND PARTNER K-9 BRIX # K-568

.......... POLICE OFFICER ANGEL ORTIZ ( BADGE NO. UNKNOWN)

.......... POLICE OFFICER (SUPERVISOR) RICHARD KURTH # 8323

.......... POLICE OFFICER (SGT.) MORACE (H1B)( BADGE NO. UNKNOWN)

.......... JOHN DOES AND JANE DOES'S 1-10 ( BADGE NO. PRESENTLY UNKNOWN)

.......... EACH DEFENDANT IS BEING SUED INDIVIDUALLY AND AS A POLICE OFFICER FOR THE CITY OF PHILADELPHIA.
(DEFENDANTS)

---

---

FROM: 53960066
TO:
SUBJECT:
DATE: 07/19/2018 12:06:13 PM

... (INSERT 4-A)

...4-a) APPLE INC. IS A DEFENDANT THAT IS NOT EMPLOYED BY THE CITY OF PHILADELPHIA. APPLE IS A PRIVATE COMPANY THAT IS IN, 1 INFINITE LOOP, CUPERTINO, CALIFORNIA.

...4-b) APPLE INC. IS BEING SUED IN HIS /OR HER INDIVIDUAL CAPACITIES AND AS A CORPORATION. AT ALL TIMES MENTIONED IN THIS COMPLAINT .

(PLEASE INSERT BETWEEN 4-5)

---

DEFENDANTS

COMPLAINT

JURISDICTION

...1) THIS ACTION IS BROUGHT PURSUANT TO 42 UNITED STATES CODE SECTION 1983. JURISDICTION IS BASE UPON 28 UNITED STATES CODE 1331 AND 1341 (1) (3) AND (4). PLAINTIFF FURTHER INVOKE THE SUPPLEMENTAL JURISDICTION UNDER 28 UNITED STATES CODE SECTION 1376(A) TO HEAR AND DECIDE CLAIMS UNDER STATE LAW.

PARTIES

...1) PLAINTIFF TALLI J.MCFADDEN IS AN ADULT MALE WHO IS AND WAS AT ALL MATERIAL TIMES A RESIDENT OF PHILADELPHIA PENNSYLVANIA. HE IS CURRENTLY CONFINED IN PHILADELPHIA, IN THE FEDERAL DETENTION CENTER PHILADELPHIA.

...2) DEFENDANT CITY OF PHILADELPHIA IS MUNICIPALITY OF THE COMMONWEALTH OF PENNSYLVANIA THAT OWNS, OPERATES, MANAGES, DIRECTS, AND CONTROL THE CITY OF PHILADELPHIA POLICE DEPARTMENT, WHICH EMPLOYED DEFENDANT POLICE OFFICERS AT ALL TIMES RELEVANT TO THIS ACTION.

...3) THOSE DEFENDANTS POLICE OFFICERS WHO ARE NAMED IN THE INSTANT COMPLAINT WERE AT ALL TIMES RELEVANT TO THIS ACTION OFFICERS OF THE CITY OF PHILADELPHIA POLICE DEPARTMENT. MOST, IF NOT ALL, OF THESE DEFENDANTS WERE MEMBERS OF THE HIGHWAY PATROL UNIT OR OTHER UNIT PURPORTEDLY DEALING WITH INVESTIGATION OF ILLEGAL NARCOTICS OR WEAPONS. EACH IS BEING SUED IS HIS/HER INDIVIDUAL CAPACITY AND AS POLICE OFFICER FOR THE CITY OF PHILADELPHIA. THESE DEFENDANT POLICE OFFICERS ARE: P.O. JASON REID(BADGE NO. 4415),P.O. TIMOTHY MURPHY(BADGE NO. 4859),P.O. RYAN FLYNN (BADGE NO. 2638), P.O. SUPERVISOR RICHARD KURTH (BADGE NO. 8323), P.O. SERGEANT MORACE HIB (BADGE NO. UNKNOWN), P.O. BRIAN QUIRPLE (BADGE NO. 5989) & HIS K-9 PARTNER BRIX #K-568, P.O. ORTIZ ( BADGE NO. UNKNOWN) 15TH DISTRICT OFFICER. ONE OF THE PRESENTLY UNKNOWN JOHN DOE 1-10 OR JANE DOE'S 1-10 OFFICERS WERE ASSIGNED THE FOLLOWING BADGE NUMBER #1306. THAT DEFENDANT NAME IS CURRENTLY UNKNOWN THE PHILADELPHIA OFFICER TO WHOM THIS BADGE NUMBER IS ASSIGNED TO YOU IS BEING SUED IN HIS/HER INDIVIDUAL CAPACITY AND AS A POLICE OFFICER FOR THE CITY OF PHILADELPHIA.

...4) UPON INFORMATION AND BELIEF, DEFENDANT POLICE OFFICERS JOHN DOE 1-10 AND JANE DOE 1-10 WERE AT ALL TIMES RELEVANT TO THIS ACTION OFFICERS OF THE CITY OF PHILADELPHIA POLICE DEPARTMENT, MOST OF WHOM WERE MEMBERS OF THE 15TH DISTRICT & 2ND DISTRICT OR OTHER UNITS DEALING WITH THE PURPORTED INVESTIGATION OF ILLEGAL NARCOTICS AND GUNS AND WHOSE IDENTITIES ARTE PRESENTLY UNKNOWN. EACH IS BEING SUED AND HIS/HER INDIVIDUAL CAPACITY AND AS A POLICE OFFICER OF THE CITY OF PHILADELPHIA. (Insert 4-A)

FACTS

...5) ON OR ABOUT OCTOBER 31ST,2013, PLAINTIFF WAS EXITING AND CLOSING THE DOOR OF A BLUE BMW LOCATED IN THE DRIVEWAY OF 4737-39 N. PENN ST IN PHILADELPHIA.

...6) AT OR ABOUT 10:30PM ON THE DATE, DEFENDANT POLICE OFFICER JASON REID(BADGE NO. 4415) EXITED HIS MARKED POLICE VEHICLE H-27 IN UNIFORM WITH HIS GUN DRAWN SCREAMING "DON'T YOU MOVE, PUT YOUR HANDS UP, NOW RIGHT NOW! "AND DEMANDING WHERE'S IS THE GUN THERE WASN'T a GUN ON THE PLAINTIFF PERSON.

...7) DEFENDANT POLICE OFFICER JASON REID (BADGE NO. 4415) WAS OPERATOR OF THE POLICE VEHICLE WHILE DEFENDANT POLICE OFFICER TIMOTHY MURPHY (BADGE NO. 4850) WAS THE PASSENGER THEY RESPONDED TO THE RADIO CALL, PERSON WITH A GUN WAS BROADCAST OVER POLICE RADIO THE FLASH INFO WAS OF (3) B/M'S WEARING ALL BLACK CLOTHING, BLACK HOODY STANDING IN FRONT OF 4720 N. PENN ST ALL ARMED WITH GUNS.

...8) DEFENDANT POLICE OFFICER JASON REID(BADGE NO. 4415) THEN STOPPED PLAINTIFF AND SEARCHED HIM WHILE POLICE OFFICER ORTIZ(BADGE NO. UNKNOWN) WENT TO PLAINTIFF'S CAR AND OPENED THE CAR DOOR SEARCHED THE CAR AND THEN WALKED BACK OVER TO OFFICER REID THEN TOLD OFFICER REID TO GO CHECK

---

PLAINTIFF CAR. ALTHOUGH NO GUN WAS FOUND, (OFFICER REID) NEVERTHELESS DECIDED TO HAVE OFFICER ORTIZ "DETAIN" PLAINTIFF. THE DEFENDANT (OFFICER REID) COULD INSPECT THE BMW.

..9) DEFENDANT POLICE OFFICER JASON REID (BADGE NO. 4415) HAD OFFICER ORTIZ FROM THE 15TH DISTRICT WHO WAS A UNIFORM OFFICER (BADGE NO. PRESENTLY UNKNOWN) "DETAIN" PLAINTIFF WHO WAS COOPERATIVE, AND DIDN'T RESIST IN ANYWAY.

..10) DEFENDANT OFFICER REID(BADGE NO. 4415) WALK TO THE BMW AND NOTICED IN PLAIN SIGHT IN THE REAR PASSENGER SEAT A WHITE BAG WITH A ORANGE NIKE SHOE BOX.

..11) DEFENDANT POLICE OFFICER JASON REID(BADGE NO. 4415) WALKED BACK TO OFFICER ORTIZ(BADGE NO. PRESENTLY UNKNOWN) AND PLAINTIFF (OFFICER REID) TIGHTENED THE HANDCUFFS ON THE PLAINTIFF AND INSISTED THAT PLAINTIFF TELL HIM SOMETHING OR "HE'S GOING TO JAIL".

..12) THE DEFENDANT OFFICER JASON REID (BADGE NO. 4415) WAS ASKING PLAINTIFF FOR INFORMATION ON DRUG TRAFFICKING FOLLOWING PLAINTIFF REPEATED DENIALS OF KNOWLEDGE CONCERNING DRUG TRAFFICKING, THE DEFENDANT JASON REID(BADGE NO. 4415) REPLIED, "YOUR GOING TO JAIL ANYWAY AND YOUR CAR WILL BE TAKEN FROM YOU. YOU WILL BE PAYING FOR YOUR CAR AND YOU WONT BE DRIVING IT." AT THIS POINT OFFICER REID AND OFFICER ORTIZ PUT PLAINTIFF IN THE BACK OF OFFICER REID'S PATROL CAR.

...13) THE DEFENDANT OFFICER TIMOTHY MURPHY (BADGE NO. 4850) GOT IN THE PATROL CAR AND ASKED PLAINTIFF HIS NAME AND PLAINTIFF REPLIED "TALLI J. McFadden."

...14) DEFENDANT POLICE OFFICER ORTIZ BADGE NO. UNKNOWN FROM THE 15TH DISTRICT OPENED TO THE PATROL DOOR ON PLAINTIFF AND DEMANDED PLAINTIFF CELL PHONE.

...15) DEFENDANT POLICE OFFICER JASON REID(BADGE NO. 4415) WALKED OVER TO THE PATROL CAR WHILE BACK DOOR WAS OPEN AND MANHANDLED PLAINTIFF TO TAKE HIS CELL PHONE WITH OFFICER ORTIZ BADGE NO. UNKNOWN DEFENDANT POLICE OFFICER JASON REID PUSHED PLAINTIFF HEAD INTO THE OTHER SIDE OF THE PATROL CAR WHILE OFFICER ORTIZ WENT INTO PLAINTIFF BACK POCKET AND TOOK PLAINTIFF CELL PHONE. AS OFFICER ORTIZ WALK AWAY FROM THE PATROL CAR PLAINTIFF ASK WHERE IS HE GOING WITH HIS CELL PHONE. OFFICER REID SAID " DON'T WORRY ABOUT IT," AND CLOSE THE BACK DOOR OF THE PATROL CAR, AND HE GOT BACK INTO THE FRONT SEAT OF THE PATROL CAR AND SAID "HOW DO YOU HAVE A BETTER BMW THEN ME ?"

...16) ON OR ABOUT 10:47PM PLAINTIFF WAS TAKEN OUT OF THE BACK SEAT OF THE PATROL CAR BY DEFENDANT POLICE OFFICER JASON REID (BADGE NO. 4415) AND OFFICER ORTIZ (BADGE NO. UNKNOWN MANHANDLED PLAINTIFF DURING THE SWITCH FROM THE PATROL CAR TO THE PATTY WAGON LEAVING MARKS ON PLAINTIFF WRIST AS A RESULT OF A CONTROLLED HOLD AND EXCESSIVE TIGHT HANDCUFFS. BEFORE PLAINTIFF GOT INTO THE PATTY WAGON OFFICER REID SAID TAKE A GOOD LOOK AT YOUR CAR BECAUSE THAT'S THE LAST TIME YOU GONNA SEE IT FOR A LONG TIME. AS PLAINTIFF WAS BEING PUT IN THE PADDY WAGON HE NOTICED ONE OF THE UNKNOWN OFFICERS OF PHILADELPHIA PULLING OFF IN HIS BMW AS HE WAS BEING LOCK IN THE BACK OF THE PATTY WAGON.

...17) PLAINTIFF, WHO HAD NOT VIOLATED ANY LAWS OF THE COMMONWEALTH OF PENNSYLVANIA OR ANY OTHER JURISDICTION, WAS ARRESTED AND TRANSPORTED TO THE 15TH POLICE DISTRICT WHERE HE WAS ARRAIGNED ON THE FOLLOWING CHARGES.

A. MANUFACTURE, DELIVERY, OR POSSESSION WIT INTENT TO DELIVER A CONTROLLED SUBSTANCE PURSUANT TO 35 P.S. 780-113(A) (30);

B. INTENTIONAL POSSESSION OF A CONTROLLED SUBSTANCE PURSUANT TO 35 P.S. 780-113 (A)(16) AND

C. USE OR POSSESSION OF DRUG PARAPHERNALIA 35 P.S. 780-113(A)(32)

...18) DURING THE INCIDENT DEFENDANT POLICE OFFICER TIMOTHY MURPHY (BADGE NO. 4850) REMOVED $ 891.00 FROM PLAINTIFF AT THE 15TH DISTRICT AND PLAINTIFF ASKED DEFENDANT WHERE IS HIS CELL PHONE AND DEFENDANT REPLIED I DON'T KNOW IM JUST COUNTING THE MONEY THAT I TOOK OUT YOUR POCKET AND PUTTING IT ON A PROPERTY RECEIPT.

...19) ON NOVEMBER 1,2013 PLAINTIFF HAD TO CALL HIS FAMILY TO POST HIS BAIL, ONCE THE BAIL WAS POSTED HIS RELEASE WAS DELAYED UNTIL THE FBI CAME TO THE 15TH DISTRICT TO RECOVER HIS CELL PHONE. THE FBI

---

FROM: 53960066
TO:
SUBJECT:
DATE: 07/16/2018 03:11:48 PM

... ( insert 19-a)

...19-a) ON NOVEMBER 12, 2013 AT APPROXIMATELY 1:45PM THE WARRANT WAS EXECUTED BY FEDERAL BUREAU OF INVESTIGATION (FBI) SPECIAL AGENT JEFFREY HUNTER ON APPLE I-PHONE. SEE EXHIBIT

...19-b) THE PHONE WAS SUBSEQUENTLY SUBMITTED TO THE (FBI) REGIONAL COMPUTER FORENSICS LABORATORY (RCFL) BY SPECIAL AGENT HUNTER ON NOVEMBER 13, 2013 FOR EXAMINATION. SEE EXHIBIT

...19-c) ON NOVEMBER 15 , 2013 AT 1:11PM, HUNTER JEFFREY, SENT SOMEONE BY THE NAME JOANN EMAIL. ASKING APPLE FOR EXAMINATION WITH A FEDERAL SEARCH WARRANT AND CORRESPONDING COURT ORDER. SEE EXHIBIT

...19-d) ON NOVEMBER 18 , 2013 SUBPOENAS@APPLE.COM RESPONDED TO S/A HUNTER ABOUT GET THE APPLE I-PHONE EXTRACTION DATE ONCE ALL APPROVALS HAVE BEEN RECEIVED. SEE EXHIBIT

...19-e) EXAMINATION BY (RCFL) DETERMINED THEY WERE UNABLE TO PROCESS THE PHONE DUE TO IT BEING LOCKED. THE PHONE WAS SUBSEQUENTLY RETURNED TO S/A HUNTER ON NOVEMBER 21, 2013. SEE EXHIBIT

( pick back up # 20)

---

GOT THE CELL PHONE FROM PHILADELPHIA POLICE OFFICER (NAME UNKNOWN BADGE NO. 1306). WHEN PLAINTIFF WAS RELEASED HE ASK FOR HIS PROPERTY AND HE WAS HANDED A PROPERTY RECEIPT, NO KEYS, NO CELL PHONE. PLAINTIFF BEGAN TO PROTEST BECAUSE THE PROPERTY RECEIPT ONLY SAID SOMETHING ABOUT MONEY. "THIS IS RIDICULOUS WHERE IS MY THINGS". PLAINTIFF WAS HELD IN CUSTODY FOR APPROXIMATELY ONE(1)DAY, AS A RESULT OF THE CHARGES. (INsert 19-A)

...20) PLAINTIFF FAMILY AND PLAINTIFF HAD TO OBTAIN CRIMINAL COUNSEL TO REPRESENT PLAINTIFF, AND HAD TO OBTAIN A FORFEITURE COUNSEL ALSO TO REPRESENT HIM TO GET HIS VEHICLE BACK.

...21) PLAINTIFF VEHICLE WAS IMPOUNDED IN THE PHILADELPHIA POLICE AUTO IMPOUND LOT.

...22) ON OR ABOUT AUGUST 2014 PLAINTIFF WAS AT CJC FOR COURT APPREARANCE DEFENDANT POLICE OFFICER ORTIZ (BADGE NO. UNKNOWN) SEEN PLAINTIFF AND SAID YOU GONNA TO JAIL TODAY BUDDY AND PLAINTIFF TOLD HIM HOW CAN I GO TO JAIL WHEN THE PEOPLE OUT THERE THAT NIGHT ON 4700 PENN ST GOT YOU ON VIDEO DOING A SEARCH OF MY VEHICLE DEFENDANT ORTIZ STATED WHAT YOU GOT ME ON VIDEO THEN WALKED UP TO PLAINTIFF AND STRONG ARMED PLAINTIFF IN THE HALLWAY OF THE COURTHOUSE OF CJC ON THE 10TH FLOOR AND TOOK PLAINTIFF CELL PHONE.

...23) PLAINTIFF PROTESTED THIS BEHAVIOR, POLICE OFFICER ORTIZ BADGE NO. PRESENTLY UNKNOWN STATED "SHUT UP BEFORE I ARREST YOU FOR THREATEN ME IM GOING THRU THIS CELL PHONE TO MAKE SURE YOU AINT GOT NO VIDEOS OF ME ON THIS CELL PHONE."

...24) PLAINTIFF PROTEST EVEN LOUDER IN THE HALLWAYS OF CJC ON THE 10TH FLR. REPLYING TO OFFICER ORTIZ GIVE ME MY CELL PHONE BACK WHY DID YOU TAKE MY CELL PHONE WHAT YOU'VE DONE HERE IS STRONG -ARMED ROBBERY ON ME AND I WOULD LIKE MY CELL PHONE BACK I DIDN'T VIOLATE ANY LAWS. WHEN OFFICER ORTIZ REFUSED TO GIVE BACK PLAINTIFF HIS CELL PHONE PLAINTIFF CALLED HIS LAWYERS LAW OFFICE AND SPOKE TOO SECRETARY DANIELLE AND TOLD HER THAT OFFICER ORTIZ JUST DID A STRONG ARM ROBBERY ON HIM IN THE CJC AS HE WAS WAITING TO GO IN THE COURT ROOM WITH HIS ATTORNEY ANTHONY J PETRONE AS HE WAITED FOR HIS ATTORNEY TO COME TO LET HIM KNOW THAT OFFICER ORTIZ HAD HIS CELL PHONE.

...25) DEFENDANT POLICE OFFICER ORTIZ BADGE NO. PRESENTLY UNKNOWN BEGIN MOCKING PLAINTIFF 'GIMME MY CELL PHONE BACK GIMME MY CELL PHONE BACK" AND HE SAYS HE'LL GET IT BACK WHEN HE'S DONE LOOKING THRU IT THEN PLAINTIFF REPLIED YOUR RIGHT IM JUST WAITING FOR MY LAWYER TO COME YOUR GONNA GIVE ME MY PHONE BACK OFFICER BECAUSE YOU JUST BROKE THE LAW YOU JUST DID A STRONG ARM ROBBERY IN CJC COURTHOUSE. OFFICER ORTIZ CONTINUED TO SEARCH THRU PLAINTIFF CELL PHONE.

...26) PLAINTIFF KEPT ON PROTESTING IN THE HALLWAYS AT CJC DRAWING ATTENTION FOR OTHER LAWYERS AND OTHER CITY OFFICERS TO TAKE NOTICE WHAT OFFICER ORTIZ HAD DONE AND AFTER HE GOT FINISHED GOING THRU THE CELL PHONE OFFICER ORTIZ TRIED TO GIVE THE PHONE BACK TO PLAINTIFF AND PLAINTIFF REFUSED TO TAKE IT BECAUSE HE WANTED HIS ATTORNEY TO KNOW WHAT OFFICER ORTIZ HAD DONE.

...27) PLAINTIFF RETURNED WITH HIS LAWYER ANTHONY J PETRONE AND HIS LAWYER APPROACHED DEFENDANT ORTIZ AND ASKED HIM WHERE WAS HIS CLIENTS CELL PHONE DEFENDANT POLICE OFFICER ORTIZ STOOD THERE AND WOULDNT SAY A WORD TO PLAINTIFF'S ATTORNEY FOR TWO TO THREE MINUTES AND THEN ATTORNEY PETRONE REPEATED THE QUESTION AGAIN AND DEFENDANT ORTIZ REPLIED I GAVE THE CELL PHONE TO HIS FRIEND.

---

FROM: 53960066
TO:
SUBJECT:
DATE: 07/20/2018 07:45:02 PM

.... ( insert : 31- a)

...31-a) ON OCTOBER 24,2014 THE PHONE WAS SENT TO APPLE INC., 1 INFINITE LOOP, CUPERTINO, CALIFORNIA PURSUANT A COURT ORDER ISSUED IN THE EDPA REQUIRING APPLE TO ASSIST LAW ENFORCEMENT WITH THE SEARCH OF THE PHONE.

...31-b) THE PHONE, ALONG WITH A THUMB DRIVE OF SEARCH RESULTS EXTRACTED BY APPLE PURSUANT TO THEIR SEARCH OF THE PHONE WAS RETURNED TO THE (FBI) AND WAS RECEIVED BY S/A HUNTER ON NOVEMBER 24, 2014.

...31-c) THE SEARCH RESULTS PROVIDED BY APPLE WERE SUBSEQUENTLY SUBMITTED TO THE (RCFL) FOR EXAMINATION ON NOVEMBER 25 , 2014.

...31-d) ON DECEMBER 9 , 2014 EXAMINATION RESULTS WERE PROVIDED TO S/A HUNTER IN DATA DISC FORMAT.

...31-e) THE OFFICIAL F.B.I. RECORD SHOWS, THE PHONE WAS SENT 11 MONTHS AFTER THE WARRANT EXPIRED. THIS IS FAR OUTSIDE THE TIME PERMITTED UNDER LAW FOR THE OFF-SITE EXAMINATION TO TAKE PLACE. THEREFORE APPLE INC. UNLOCKED THE CELL PHONE WITHOUT " CLEAR LEGAL AUTHORITY". AND VIOLATED PLAINTIFF RIGHTS.

...31-f) APPLE INC. ACTIONS WERE INTENTIONAL, MALICIOUS, IN BAD FAITH, RECKLESS, INDIFFERENT AND DELIBERATELY INDIFFERENT TO THE PLAINTIFF CONSTITUTIONAL RIGHT. THERE WAS CASES WERE APPLE DECLINED TO HELP THE GOVERNMENT AROUND THE TIME THEY AGREE TO BREAK INTO PLAINTIFF PHONE. SEE: UNITED STATES V. DJIBO, 151 F. SUPP. 3D 297, 2015. ALSO, UNITED STATES V. FENG ANOTHER CASE THAT APPLE REJECTED THE GOVERNMENT ASSISTED. THE LAST BUT THE BIGGEST CASE OF ALL TIME. THIS WAS THE WELL KNOWN CASE DURING THE TIME PERIOD APPLE REFUSED TO UNLOCK THE (I- PHONE) SAN BERNIDO TERRORIST ATTACK FEBRUARY 16, 2016. WHICH HAD REAL SERIOUS QUESTIONS OF NATIONAL SECURITY, APPLE ARGUED AGAINST ASSISTING LAW ENFORCEMENT.

( PLEASE INSERT BETWEEN 31-32)

---

FROM: 53960066
TO: Cargen, Danielle; Cigainero, Margeaux; Mcfadden, Tiana; Publishing, Infinity
SUBJECT: CONT. PAGE 2
DATE: 07/12/2018 10:07:33 AM

...28) THE DEFENDANT ORTIZ WAS AWARE OF EXCULPATORY INFORMATION ABOUT THE PLAINTIFF'S CASE AND OFFICER ORTIZ KNEW THE NIGHT OF OCTOBER 31ST , 2013 THAT PEOPLE ON THE STREETS OF 4700 BLOCK OF PENN ST. WAS RECORDING THE WHOLE INCIDENT OF PLAINTIFF'S ARREST.

...29) THE DEFENDANT POLICE OFFICERS FAILED TO PROVIDE THE EXCULPATORY INFORMATION KNOWN TO THEM TO THE DISTRICT'S ATTORNEY OFFICE OR TO THE PROPER OFFICER WHO PREPARED THE SEARCH WARRANT FOR THE CAR KNOWING THAT HE DEFENDANT OFFICER ORTIZ HAD SEARCHED THE CAR BEFORE OFFICER REID AND BEFORE CALLING OFFICER BRIAN QUIRPLE BADGE NO. #5898 AND K-9 PARTNER BRIX BADGE NO. #K-568 AND SGT. MORACE HIB BADGE NO. UNKNOWN. TO THE SCENE TO FURTHER THE UNCONSTITUTIONALLY 4TH AMENDMENT VIOLATION OF PLAINTIFFS CIVIL RIGHTS.

...30) THE EXCULPATORY INFORMATION KNOWN TO THE POLICE THAT WAS NOT PROVIDED TO THE PLAINTIFF INCLUDED THE REAL FACTS AND CIRCUMSTANCES OF THE INCIDENT.

...31) THE DEFENDANT OFFICERS, IN ANTICIPATION OF THE CHARGING OF PLAINTIFF MISREPRESENTED THE EVENTS THAT LED TO THE ARREST OF THE PLAINTIFF. THESE MISREPRESENTATIONS WERE INTENTIONAL, MALICIOUS, IN BAD FAITH, RECKLESSLY INDIFFERENT AND DELIBERATELY INDIFFERENT TO THE PLAINTIFFS CONSTITUTIONAL RIGHTS. (Insert 31-A)

...32) ON OR ABOUT FEBRUARY 17,2015 IN THE PHILADELPHIA COURT OF COMMON PLEAS AT A SUPPRESSION HEARING THAT WAS CONDUCTED BEFORE THE HONORABLE PAUL P. PANEPINTO. DEFENDANT POLICE OFFICER JASON REID(BADGE NO. 4415) AND DEFENDANT POLICE OFFICER RYAN FLYNN(BADGE NO. 2638) GAVE TESTIMONY BEFORE THE COURT. THE TESTIMONY PRESENTED THERE BY DEFENDANT JASON REID(BADGE NO. 4415) WE DELIBERATELY FALSE, RECKLESS, MALICIOUS, AND IN BAD FAITH CONCERNING THE INCIDENT DESCRIBED IN THIS EXHIBIT A.

...33) ON OR ABOUT FEBRUARY 17,2015 TESTIMONY PRESENTED THERE BY DEFENDANT POLICE OFFICER RYAN FLYNN (BADGE NO. 4415) WHO WAS AT THE SCENE THAT NIGHT SUBSTANTIALLY UNDERCUT THE VALIDITY OF THIS FACTUAL SCENARIO.

...34) PLAINTIFF DEFENSE URGED THE HONORABLE PAUL P. PANEPINTO TO REJECT THE VERSION OF FACTS OFFERED BY (OFFICER REID) AND FIND THAT THE DETENTION OF PLAINTIFF WAS UNCONSTITUTIONAL AND THE SUBSEQUENT SEARCH OF HIS VEHICLE ILLEGAL.

...35) AS PLAINTIFF AND HIS ATTORNEY DENIS J. COGAN WAS LEAVING OUT OF THE COURT ROOM INTO THE HALLWAY OFFICER REID MADE A COMMENT TO THE DEFENDANT AND ATTORNEY "YOU HAVE BIGGER PROBLEMS COMING YOUR WAY BECAUSE THE F.B.I. IS COMING TO GET YOU BECAUSE THEY CAME AND TALKED TO ME." PLAINTIFF AND HIS ATTORNEY KEPT WALKING TO THE ELEVATOR.

...36) ON OR ABOUT APRIL 9,2015 THE HONORABLE PAUL P. PANEPINTO IN A RULING WHICH DID PRECISELY THAT AND DISMISSED ALL CHARGES AGAINST PLAINTIFF IN STATE-COURT.

...37) ON OR ABOUT JUNE 15TH 2015 PLAINTIFF HAD TO GO TO COURT AT CITY HALL FOR HIS VEHICLE ON PROPERTY RECEIPT #3129517 SEIZED ON 11-1-2013. AFTER COURT PLAINTIFF HAD TO GO TO CJC COURTROOM 805, SO EVERYTHING COULD BE DONE AT COURT FOR VEHICLE TO BE RETURNED TO PLAINTIFF. THEN PLAINTIFF HAD TO GO TO PHILADELPHIA POLICE AUTO IMPOUND. ONCE THERE PLAINTIFF HAD TO PAY FEES. PLAINTIFF GOT HIS VEHICLE BACK AFTER 19 LONG MONTHS, THEN HE WAS ABLE TO RETURN THE RENTAL CAR HE HAD OUT UNDER HIS NAME FOR THOSE LONG STRESSFUL MONTHS WHILE IS CAR WAS IN THE PHILADELPHIA POLICE IMPOUND.SEE EXHIBITS

...38) ON OR ABOUT JULY 30,2015 PLAINTIFF RECEIVED HIS PASSPORT FROM THE EVIDENCE CLERK POLICE DEPT. SEE EXHIBIT

---

...39) PLAINTIFF WAS FEDERALLY INDICTED ON CHARGES FROM IN OR ABOUT SEPTEMBER 2009 THROUGH ON OR ABOUT OCT. 21,2015

...40) THEN OR ABOUT MAY 25,2016. A FEDERAL GRAND JURY RETURNED A SUPERSEDING INDICTMENT CHARGING PLAINTIFF.

...41) ON JULY 15,2016 PLAINTIFF FILED A MOTION TO SUPPRESS EVIDENCE RECOVERED DURING A SEARCH OF PLAINTIFF VEHICLE AND THEN THE SUBSEQUENT ARREST OF PLAINTIFF BY THE PHILADELPHIA POLICE DEPARTMENT ON OCTOBER 31,2013. DURING THE ARREST OF TALLI J. MCFADDEN HIS APPLE I PHONE WAS SEIZED AND NO PROPERTY RECEIPT WAS EVER GIVEN TO PLAINTIFF BUT THE CELL PHONE WAS TURNED OVER TO F.B.I. ON NOVEMBER 1,2013. WHICH WAS TAKEN FROM PLAINTIFF BY DEFENDANT ORTIZ BADGE NO. UNKNOWN ON OCTOBER 31,2013.

...42) ON OR ABOUT JULY 29, 2016. GOVERNMENT FILED A MOTION STATE THEY WILL NOT INTRODUCE ANYTHING FROM THE SEARCH OF PLAINTIFF VEHICLE AND THE CELL-PHONE FROM THE ARREST OF MR. MCFADDEN ON OCTOBER 31ST, 2013.( WHICH WAS A HOT ITEM).

...43) ON OR ABOUT NOVEMBER 3,2016 THE PLAINTIFF HAD A EVIDENTIARY HEARING.

...44) ON OR ABOUT 21ST DAY OF NOVEMBER 2016 HONORABLE JUDGE GENE E. K. PRATTER DENIED PLAINTIFF MOTION WITHOUT PREJUDICE.

...45) ON OR ABOUT OCTOBER 2017 PLAINTIFF WAS IN THE HOLE(SHU) AND WAS COMMUNICATING WITH FORMER DISTRICT ATTORNEY OF PHILADELPHIA SETH WILLIAMS AND PLAINTIFF HAVE RECEIVED INFORMATION FROM FORMER D.A. THAT IT WAS A LIST INVOLVING DIRTY COPS IN PHILADELPHIA THAT WOULD BE COMING OUT VERY SOON.

...46) ON OR ABOUT FEBRUARY 14,2018 THE PHILADELPHIA DAILY NEWS HAD A INTERVIEW OF THE NEW DISTRICT ATTORNEY OF PHILADELPHIA LARRY KRASNER THAT THERE WAS A SECRET LIST OF BAD COPS. SEE EXHIBIT

...47) ON OR ABOUT MARCH 18TH,2018 THE PHILADELPHIA DAILY NEWS HAD ANOTHER INTERVIEW WITH NEW DISTRICT ATTORNEY LARRY KRASNER WHO MENTIONED THAT THE D.A.s NAUGHTY LIST OF TROUBLED PHILLY COPS. SEE Exhibits'

...48) ON OR ABOUT APRIL 16,2018 THE DON'T NOT CALL LIST CAME OUT PERTAINING ALL THE OFFICERS OF PHILADELPHIA WHO WAS CORRUPT OR UNDER SOME TYPE OF INVESTIGATION AND DEFENDANT POLICE OFFICER ORTIZ BADGE NO. UNKNOWN WAS ONE OF THE OFFICERS ON THE LIST WHO WAS ON THE SCENE ON OCT. 31ST 2013 WHEN PLAINTIFF WAS UNCONSTITUTIONAL SEARCHED AND DETAINED AND WHO TOOK PLAINTIFF CELL PHONE FROM PLAINTIFFS POCKET.

...49) IN A LETTER DATED DECEMBER 3, 2012, THE FORMER DISTRICT ATTORNEY OF PHILADELPHIA SETH WILLIAMS, ANNOUNCED THAT IN EXERCISE OF " PROSECUTORIAL DISCRETION,' HIS OFFICE: WOULDN'T AT ALL USE OFFICERS WHO WAS ENGAGED IN CONDUCT RAISING QUESTIONS ABOUT THEIR INTEGRITY AND LAW-ABIDINGNESS WHILE ON DUTY. SETH WILLIAMS OFFICE REFUSED TO CHARGE OR PROSECUTE CASES OF THE DIRTY COP LIST, AT THAT TIME SETH WILLIAMS ONLY NAME A FEW BUT HAD MORE NAMES.

...50) AT THE TIME OF THIS INCIDENT, AND FOR YEARS BEFORE, LAW ENFORCEMENT AT THE HIGHEST LEVELS KNEW OF INTEGRITY, CORRUPTION, AND CIVIL RIGHTS VIOLATION ISSUES INVOLVING THE DIRTY LIST OF THE CITY OF PHILADELPHIA POLICE OFFICERS. FEDERAL AGENTS AND FEDERAL PROSECUTORS KNEW. THE CURRENT AND FORMER PHILADELPHIA POLICE COMMISSIONER, HIS PREDECESSORS, AND SOME OF HIS SUBORDINATES KNEW. FORMER DISTRICT ATTORNEY SETH WILLIAMS AND LYNN ABRAHAM AND SOME OF HER SUBORDINATES, AS WELL AS WELL AS HER SUCCESSOR IN OFFICE KNEW. THE BASIC OF THIS KNOWLEDGE WAS INFORMATION FROM MULTIPLE SOURCES INCLUDING, BUT NOT LIMITED TO FEDERAL INVESTIGATIONS, INTERNAL INVESTIGATIONS, QUESTIONS RAISED BY STATE AND FEDERAL PROSECUTORS, AND OTHER SOURCES.

...51) THE MOST OUTRAGEOUS THING ABOUT ALL THIS IS THAT IT TOOK THE NEW DISTRICT ATTORNEY LARRY KRASNER TO COME IN TO DEAL WITH THE INTERNAL LIST CREATED UNDER FORMER DA.SETH WILLIAMS TO EXPOSE ALL THE DIRTY COPS WHO WAS RUNNING AROUND IN THE CITY OF PHILADELPHIA BREAKING THE LAW TO IN FORCE THE LAW.

TRULINCS 53960066 - MCFADDEN, LARUE - Unit: PHL-G-N

---

FROM: 53960066
TO:
SUBJECT:
DATE: 07/20/2018 08:41:34 PM

... ( INSERT 60-A)

...60-a) APPLE INC. ROUTINELY RECEIVES REQUESTS FROM LAW ENFORCEMENT TO BYPASS SECURITY FEATURES ON (I-PHONES) IN ORDER TO GAIN ACCESS TO CUSTOMER DATA ON THE PHONES.IN EFFORTS TO RESIST TO COMPLYING WITH SUCH REQUESTS APPLE INC. CITED A "Fear" THAT HELPING THE GOVERNMENT WOULD "THREATEN", "THE TRUST BETWEEN APPLE AND ITS CUSTOMERS AND SUBSTANTIALLY "TARNISH" THE APPLE BRAND".
HOW EVER APPLE INC. GRANT A REQUEST IN THE INVESTIGATION OF TALLI J. MCFADDEN, HERE TO FORE KNOWN AS THE PLAINTIFF. IN THIS CASE APPLE INC. AGREED TO COMPLY WITH A REQUEST FROM THE FEDERAL BUREAU OF INVESTIGATION RELATED TO A WARRANT ISSUED ON NOVEMBER 12, 2013. NO COURT ORDER TO APPLE INC. WITH THIS CASE HAS BEEN PROVIDED TO PLAINTIFF THROUGH DISCOVERY AS OF THIS FILING.

...60-b) ACCORDING TO THE OFFICIAL RECORD FROM THE F.B.I. THEY DID NOT SEND THE CELL PHONE UNTIL OCTOBER 24, 2014. THEREFORE, APPLE INC. UNLOCKED PLAINTIFF CELL PHONE OUTSIDE OF THE AUTHORIZED TIMEFRAME MEANING THERE WAS NO CLEAR LEGAL AUTHORITY TO UNLOCK THE (APPLE I-PHONE) TO UNLOCK THE PHONE.

...60-c) APPLE ACTION WERE INCONSISTENT WITH THEIR STANDARD BUSINESS PRACTICES AT THE TIME COUNTER TO THEIR OWN ARGUMENTS AGAINST ASSISTING LAW ENFORCEMENT IN THIS MANNER. APPLE INC. ACTIONS DAMAGES PLAINTIFF BY PROVIDING INFORMATION TO LAW ENFORCEMENT. PLAINTIFF THEREFORE, SEEKS COMPENSATION COMMENSURATE WITH THE DAMAGES INFLICTED.

...60-d) PLAINTIFF WAS DAMAGED BY APPLE INC. FOR RELEASING HIS PRIVATE INFORMATION TO THE GOVERNMENT WHEN APPLE INC. PROMISED THEY WOULD PROTECT PLAINTIFF DATA AND INFORMATION AS A CUSTOMER. APPLE INC. (I-PHONE) USER AGREEMENT STATES THEY WILL PROTECT THERE SHAREHOLDERS AND CUSTOMERS INFORMATION AT ALL TIMES AS A PRIVATE COMPANY.

( PLEASE INSERT BETWEEN 60-61)

---

...52) WHEN SETH WILLIAMS WROTE THE LETTER AND EXPOSED THE SIX OFFICERS,WHY DIDN'T HE EXPOSE ALL THE OTHER ONES KNOWING THAT THERE WAS MORE OFFICERS ENGAGED IN CONDUCT RAISING QUESTIONS.

DAMAGES

...53)THE UNLAWFUL, INTENTIONAL,WILLFUL,DELIBERATELY INDIFFERENT, AND RECKLESS ACTS AND OMISSIONS OF THE INDIVIDUAL DEFENDANTS AND THE CITY OF PHILADELPHIA CAUSED IMPROPERLY ARRESTED AND IMPRISONED, UNFAIRLY TRIED.

...54) THIS DECISION RESTED ON KNOWLEDGE THAT SOME AND/OR ALL OF THE DEFENDANTS OFFICERS IN THIS MATTER HAD ENGAGED IN CONDUCT RAISING QUESTIONS ABOUT THEIR INTEGRITY AND LAW-ABIDINGNESS WHILE ON DUTY.

...55) AT THE TIME OF THIS INCIDENT, ALL OF THE DEFENDANTS OFFICERS KNEW OF INTEGRITY, CORRUPTION, AND CIVIL RIGHTS VIOLATION ISSUES. THE OFFICER ORTIZ WAS ON THE SECRET LIST OF BAD COPS UNDER SETH WILLIAMS. ALSO IN A LETTER DATED DECEMBER 3, 2012, THE DISTRICT ATTORNEY OF PHILADELPHIA, SETH WILLIAMS, KNEW HE WAS ON THAT LIST BUT DIDN'T DISCLOSE ALL THE NAMES.

...56) AS A DIRECT AND PROXIMATE RESULT OF THE DEFENDANT'S ACTIONS, PLAINTIFFS TALLI J. MCFADDEN WERE DEPRIVED OF RIGHTS, PRIVILEGES, AND IMMUNITIES UNDER THE FOURTH, FIFTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND IN PARTICULAR THE RIGHT TO BE FREE FROM UNJUSTIFIED SEARCHES THE RIGHT TO BE FREE FROM MALICIOUS PROSECUTION, AND THE RIGHT TO DUE PROCESS OF LAW. PLAINTIFF WAS SIMILARLY DEPRIVED OF THE RIGHT NOT TO BE VICTIM OF CONSPIRACIES OF STATE ACTORS TO VIOLATE THE AFOREMENTIONED CLEARLY ESTABLISHED RIGHTS.

...57) THE ACTIONS AND/OR INACTIONS OF THE DEFENDANTS VIOLATED THE CLEARLY ESTABLISHED FEDERAL CONSTITUTIONAL RIGHTS OF THE PLAINTIFF TO FREEDOM FROM USE OF EXCESSIVE, UNREASONABLE, AND UNJUSTIFIED FORCE AGAINST HIS PERSON, THE RIGHT TO BE FREE FROM MALICIOUS PROSECUTION, AND THE RIGHT TO DUE PROCESS OF LAW.

...58) ALL ACTIONS TAKEN BY THE DEFENDANTS IN THIS MATTER WERE TAKEN UNDER COLOR OF STATE LAW.

...59) AS A PROXIMATE RESULT OF THE ACTIONS AND/OR INACTIONS OF THE DEFENDANTS IN THIS MATTER, PLAINTIFF HAVE SUFFERED PHYSICAL PAIN, MENTAL ANGUISH, EMOTIONAL DISTRESS, AND RESTRICTIONS ON ALL FORMS OF PERSONAL FREEDOM INCLUDING BUT NOT LIMITED TO DIET,SLEEP,PHYSICAL ILLNESS OF A BROKEN HEART, LOSS OF LIBERTY, ANXIETY, FEAR, MENTAL HARM, AND ECONOMIC FINANCIAL LOSS, BAD CREDIT, CREDIT CARD DEBT, ALSO A OUT STANDING DEBT WITH AT&T,PERSONAL FULFILLMENT, SEXUAL ACTIVITY, FAMILY RELATIONS,READING,TELEVISION,MOVIES,TRAVEL, FREEDOM OF SPEECH AND EXPRESSION.

...60) AS A DIRECT AND PROXIMATE RESULT OF THE ACTIONS AND/OR INACTIONS OF THE DEFENDANTS, PLAINTIFF WAS AND IS DEPRIVED OF RIGHTS, PRIVILEGES AND IMMUNITIES UNDER THE FOURTH, FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AS WELL AS PARALLEL PROVISIONS OF THE PENNSYLVANIA CONTITUTION AND IN PARTICULAR THE RIGHT TO BE FREE FROM EXCESSIVE FORCE, THE RIGHT TO BE FREE UNLAWFUL ARREST, THE RIGHT TO BE FREE FROM UNJUSTIFIED SEARCHES, THE RIGHT TO BE FREE FROM MALICIOUS PROSECUTION, AND THE RIGHT TO DUE PROCESS OF LAW. PLAINTIFF WAS SIMILARLY DEPRIVED OF THE RIGHT NOT TO BE VICTIMS OF CONSPIRACIES OF STATE ACTORS TO VIOLATE THE AFOREMENTIONED CLEARLY ESTABLISHED RIGHTS. (Insert 60-A)

...61) THE ACTIONS AND/OR INACTIONS OF THE DEFENDANTS VIOLATED THE CLEARLY ESTABLISHED FEDERAL AND STATE CONSTITUTIONAL RIGHTS OF THE PLAINTIFF TO BE FREE FROM EXCESSIVE FORCE, THE RIGHT TO BE FREE FROM UNLAWFUL ARREST, THE RIGHT TO BE FREE FROM UNJUSTIFIED SEARCHES, THE RIGHT TO BE FREE FROM MALICIOUS PROSECUTION, AND THE RIGHT TO DUE PROCESS OF LAW.

COUNT 1

42 U.S.C. 1983 AGAINST DEFENDANTS OFFICERS
EXCESSIVE FORCE

---

...62) PARAGRAPHS 1THROUGH 61 ARE INCORPORATED HEREIN BY REFERENCE AS THOUGH FULLY SET FORTH.

...63) PLAINTIFF WAS DAMAGED AND INJURED AS SET FORTH ABOVE UNDER 42 U.S.C. SECTION 1983 BY DEFENDANT OFFICERS IN THAT THEY, AS DESCRIBED IN DETAIL IN PRECEDING PARAGRAPHS, VIOLATED PLAINTIFF CONSTITUTIONAL RIGHTS WHILE ACTING UNDER COLOR OF LAW. MORE SPECIFICALLY, DEFENDANT OFFICERS INTENTIONALLY ACTED TO CAUSE A HARMFUL AND/OR OFFENSIVE CONDUCT WITH PLAINTIFF PERSON AND SUCH ACTIONS WAS THE ACTUAL AND PROXIMATE CAUSE OF PLAINTIFF HARM.

...64) AS A RESULT OF THE ABOVE ACTIONS THE PLAINTIFF DEMAND JUDGMENT AGAINST DEFENDANT OFFICERS IN THE AMOUNT OF ALL DAMAGES, INCLUDING COMPENSATORY DAMAGES AND PUNITIVE DAMAGES, PLUS INTEREST, INJUNCTIVE RELIEF, SUCH OTHER RELIEF AS APPEARS REASONABLE AND JUST, AS WELL AS REASONABLE ATTORNEY FEES AND COSTS UNDER 42 U.S.C. SECTION 1988.

COUNT 2

SUPPLEMENTAL STATE LAW CLAIM AGAINST DEFENDANT OFFICER

BATTERY

...65) PARAGRAPHS 1THROUGH 64 ARE INCORPORATED HEREIN BY REFERENCE AS THOUGH FULLY SET FORTH.

...66) PLAINTIFF WAS DAMAGED AND INJURED AS SET FORTH ABOVE BY DEFENDANTS OFFICERS IN THAT THEY INTENTIONALLY ACTED TO CAUSE A HARMFUL AND/OR OFFENSIVE CONTACT WITH PLAINTIFF PERSON AND SUCH ACTIONS WAS THE ACTUAL AND PROXIMATE CAUSE OF PLAINTIFF HARM.

...67) AS A RESULT OF THE ABOVE ACTIONS THE PLAINTIFF DEMAND JUDGMENT AGAINST DEFENDANT OFFICERS IN THE AMOUNT OF ALL DAMAGES, INCLUDING COMPENSATORY DAMAGES AND PUNITIVE DAMAGES, PLUS INTEREST, INJUNCTIVE RELIEF, SUCH OTHER RELIEF AS APPEARS REASONABLE AND JUST, AS WELL AS REASONABLE ATTORNEY FEES AND COST UNDER 42 U.S.C. SECTION 1988.

---

FROM: 53960066
TO: Cargen, Danielle; Cigainero, Margeaux; Mcfadden, Tiana; Publishing, Infinity
SUBJECT: PAGE 3
DATE: 07/12/2018 10:08:12 AM

...

COUNT 3
42 U.S.C. 1983 AGAINST DEFENDANTS OFFICERS
ASSAULT

...68) PARAGRAPHS 1 THROUGH 67 ARE INCORPORATED HEREIN BY REFERENCE AS THOUGH FULLY SET FORTH.

...69) PLAINTIFF WAS DAMAGED AND INJURED AS SET FORTH ABOVE UNDER 42 U.S.C. SECTION 1983 DEFENDANT OFFICERS IN THAT THEY, AS DESCRIBED IN DETAIL IN PRECEDING PARAGRAPHS, VIOLATED PLAINTIFF CONSTITUTIONAL RIGHTS WHILE ACTING UNDER COLOR OF LAW. MORE SPECIFICALLY, DEFENDANT OFFICERS INTENTIONALLY PLACED PLAINTIFF IN REASONABLE APPREHENSION OF IMMINENT HARMFUL AND/OR OFFENSIVE BODILY CONTACT, AND DEFENDANTS ACTIONS WAS THE ACTUAL AND PROXIMATE CAUSE OF PLAINTIFF HARM.

...70) AS A RESULT OF THE ABOVE ACTIONS THE PLAINTIFF DEMAND JUDGMENT AGAINST DEFENDANT OFFICERS IN AMOUNT OF ALL DAMAGES, INCLUDING COMPENSATORY DAMAGES AND PUNITIVE DAMAGES, PLUS INTEREST, INJUNCTIVE RELIEF, SUCH OTHER RELIEF AS APPEARS REASONABLE AND JUST, AS WELL AS REASONABLE ATTORNEY FEES AND COSTS UNDER 42 U.S.C. SECTION 1988.

COUNT 4
SUPPLEMENTAL STATE LAW CLAIM AGAINST DEFENDANT OFFICERS
ASSAULT

...71) PARAGRAPHS 1 THROUGH 70 ARE INCORPORATED HEREIN BY REFERENCE AS THOUGH FULLY SET FORTH.

...72) PLAINTIFF WAS DAMAGED AND INJURED AS SET FORTH ABOVE BY DEFENDANT OFFICERS IN THAT THEY INTENTIONALLY PLACED PLAINTIFF IN REASONABLE APPREHENSION OF IMMINENT HARMFUL AND/OR OFFENSIVE BODILY CONTACT, AND DEFENDANTS ACTION WAS THE ACTUAL AND PROXIMATE CAUSE PLAINTIFF HARM.

...73) AS A RESULT OF THE ABOVE ACTIONS THE PLAINTIFF DEMAND JUDGMENT AGAINST DEFENDANT OFFICERS IN THE AMOUNT OF ALL DAMAGES, INCLUDING COMPENSATORY DAMAGES AND PUNITIVE DAMAGES, PLUS INTEREST, INJUNCTIVE RELIEF, SUCH OTHER RELIEF AS APPEARS REASONABLE AND JUST AS WELL AS REASONABLE ATTORNEY FEES AND COSTS UNDER 42 U.S.C. SECTION 1988.

COUNT 5
42 U.S.C. 1983 AGAINST DEFENDANTS OFFICERS
UNLAWFUL ARREST

...74) PARAGRAPHS 1 THROUGH 73 ARE INCORPORATED HEREIN BY REFERENCE AS THOUGH FULLY SET FORTH.

...75) PLAINTIFF WAS DAMAGED AND INJURED AS SET FORTH ABOVE 42 U.S.C. SECTION 1983 BY DEFENDANT OFFICERS IN THAT THEY AS DESCRIBED IN DETAIL IN PRECEDING PARAGRAPHS, VIOLATED PLAINTIFF CONSTITUTIONAL RIGHTS WHILE ACTING UNDER COLOR OF LAW. MORE SPECIFICALLY, DEFENDANTS OFFICERS ACTED WITH THE INTENT TO ARREST PLAINTIFF UNLAWFULLY, WITHOUT PROBABLE CAUSE, AND AGAINST PLAINTIFF WILL, AND SUCH ACTIONS WAS THE ACTUAL AND PROXIMATE CAUSE OF PLAINTIFF CONFINEMENT.

...76) AS A RESULT OF THE ABOVE ACTIONS THE PLAINTIFF DEMAND JUDGMENT AGAINST DEFENDANT OFFICERS IN THE AMOUNT OF ALL DAMAGES, INCLUDING COMPENSATORY DAMAGES AND PUNITIVE DAMAGES ,PLUS INTEREST, INJUNCTIVE RELIEF, SUCH OTHER RELIEF AS APPEARS REASONABLE AND JUST AS WELL AS REASONABLE ATTORNEY FEES AND COST UNDER 42 U.S.C. SECTION 1988.

COUNT 6
SUPPLEMENTAL SATE LAW AGAINST DEFENDANT OFFICERS
FALSE IMPRISONMENT

...77) PARAGRAPHS 1 THROUGH 76 ARE INCORPORATED HEREIN BY REFERENCE AS THOUGH FULLY SET FORTH.

...78) PLAINTIFF WAS DAMAGED AND INJURED AS SET FORTH ABOVE BY DEFENDANT OFFICERS IN THAT THEY ACTED WITH THE INTENT TO CONFINE PLAINTIFF UNLAWFULLY AND AGAINST PLAINTIFF WILL, AND SUCH ACTIONS WERE THE ACTUAL AND PROXIMATE CAUSE OF PLAINTIFF CONFINEMENT.

...79) AS A RESULT OF THE ABOVE ACTIONS THE PLAINTIFF DEMAND JUDGMENT AGAINST DEFENDANT OFFICERS IN THE AMOUNT OF ALL DAMAGES, INCLUDING COMPENSATORY DAMAGES AND PUNITIVE DAMAGES, PLUS INTEREST, INJUNCTIVE RELIEF, SUCH OTHER RELIEF AS APPEARS REASONABLE AND JUST, AS WELL AS REASONABLE ATTORNEY FEES AND COSTS UNDER 42 U.S.C. SECTION 1988.

COUNT 7
42 U.S.C 1983 AGAINST DEFENDANT OFFICERS
UNJUSTIFIED SEARCH

...80) PARAGRAPHS 1 THROUGH 79 ARE INCORPORATED HEREIN BY REFERENCE AS THOUGH FULLY SET FORTH.

...81) PLAINTIFF WAS DAMAGED AND INJURED AS SET FORTH ABOVE UNDER 42 U.S.C. SECTION 1983 BY DEFENDANT OFFICERS IN THAT THEY, AS DESCRIBED IN DETAIL IN PRECEDING PARAGRAPHS, VIOLATED PLAINTIFF CONSTITUTIONAL RIGHTS WHILE ACTING UNDER COLOR OF LAW. MORE SPECIFICALLY, DEFENDANT OFFICERS SEARCH PLAINTIFF AND SEARCH THE VEHICLE WHICH PLAINTIFF TALLI J. MCFADDEN OWN WITH A WARRANT CONTAINING MATERIAL FALSE STATEMENT, AND/ OR WITHOUT PROBABLE CAUSE, OR WITHOUT AN EXCEPTION TO THE WARRANT REQUIREMENTS, AND SUCH ACTION WAS THE DIRECT AND PROXIMATE CAUSE OF PLAINTIFF HARM.

...82) AS A RESULT OF THE ABOVE ACTIONS THE PLAINTIFF DEMAND JUDGMENT AGAINST DEFENDANT OFFICERS IN THE AMOUNT OF ALL DAMAGES, INCLUDING COMPENPENSATORY DAMAGES AND PUNITIVE DAMAGES, PLUS INTEREST, INJUNCTIVE RELIEF, SUCH OTHER RELIEF AS APPEARS REASONABLE AND JUST, AS WELL AS REASONABLE ATTORNEY FEES AND COSTS UNDER 42 U.S.C. SECTION 1988.

COUNT 8
42 U.S.C. 1983 AGAINST DEFENDANT OFFICERS
MALICIOUS PROSECUTION

...83) PARAGRAPHS 1 THROUGH 82 ARE INCORPORATE HEREIN BY REFERENCE AS THOUGH FULLY SET FORTH.

...84) PLAINTIFF WAS DAMAGED AND INJURED AS SET FORTH ABOVE UNDER 42 U.S.C. SECTION 1983 BY DEFENDANT OFFICERS IN THAT THEY AS DESCRIBED DETAIL PRECEDING PARAGRAPHS, VIOLATED PLAINTIFF CONSTITUTIONAL RIGHTS WHILE ACTING UNDER COLOR OF LAW. MORE SPECIFICALLY, DEFENDANTS OFFICERS SEIZED AND ARRESTED PLAINTIFF AND INSTITUTED CRIMINAL PROCEEDINGS AGAINST PLAINTIFF WITH OUT PROBABLE CAUSE AND WITH MALICE. THESE PROCEEDINGS TERMINATED IN FAVOR OF THE PLAINTIFF. DEFENDANTS CONDUCT WAS THE DIRECT AND PROXIMATE CAUSE OF PLAINTIFF HARM.

...85) AS A RESULT OF THE ABOVE ACTIONS THE PLAINTIFF DEMAND JUDGMENT AGAINST DEFENDANT OFFICES IN THE AMOUNT OF ALL DAMAGES, INCLUDING COMPENSATORY DAMAGES AND PUNITIVE DAMAGES, PLUS INTEREST, INJECTIVE RELIEF, SUCH OTHER RELIEF AS APPEARS REASONABLE ATTORNEY FEES AND COSTS UNDER 42 U.S.C. SECTION 1988.

COUNT 9
SUPPLEMENTAL STATE LAW CLAIM AGAINST DEFENDANT OFFICERS
MALICIOUS PROSECUTION

...86) PARAGRAPHS 1 THROUGH 85 ARE INCORPORATED HEREIN BY REFERENCE AS THOUGH FULLY SET FORTH.

...87) PLAINTIFF WAS DAMAGED AND INJURED AS SET FORTH ABOVE BY THE DEFENDANT OFFICERS IN THAT THEY INSTITUTED CRIMINAL PROCEEDINGS AGAINST PLAINTIFF WITHOUT PROBABLE CAUSE AND WITH MALICE AND WHERE SUCH PROCEEDINGS WERE TERMINATED IN FAVOR OF THE PLAINTIFF.

...88) AS A RESULT OF THE ABOVE ACTIONS THE PLAINTIFF DEMAND JUDGMENT AGAINST DEFENDANTS OFFICERS IN THE AMOUNT OF ALL DAMAGES, INCLUDING COMPENSATORY DAMAGES AND PUNITIVE DAMAGES, PLUS INTEREST, INJUNCTIVE RELIEF, SUCH OTHER RELIEF AS APPEARS REASONABLE AND JUST, AS WELL AS REASONABLE ATTORNEY FEES AND COSTS UNDER 42 U.S.C. SECTION 1988.

---

COUNT 10
42 U.S.C 1983 AGAINST DEFENDANT OFFICERS
CONSPIRACY

...89) PARAGRAPHS 1 THROUGH 88 ARE INCORPORATED HEREIN BY REFERENCE AS THOUGH FULLY SET FORTH.

...90) PLAINTIFF WAS DAMAGED AND INJURED AS SET FORTH ABOVE UNDER 42 U.S.C. SECTION 1983 BY DEFENDANT OFFICERS IN THAT THEY, DESCRIBED IN DETAIL IN PRECEDING PARAGRAPHS, VIOLATED PLAINTIFF CONSTITUTIONAL RIGHTS WHILE ACTING UNDER COLOR OF LAW. MORE SPECIFICALLY, DEFENDANT OFFICERS, ACTING IN CONCERT AND CONSPIRACY, COMMITTED ACTS IN VIOLATION OF THE PLAINTIFF CONSTITUTIONAL RIGHTS AND AGAINST THE LAWS OF PENNSYLVANIA. THE DEFENDANT OFFICERS ACTED IN CONSPIRACY TO VIOLATED THE PLAINTIFF CONSTITUTIONAL RIGHTS STATED IN THE ABOVE PARAGRAPHS, AND MADE STATEMENTS AMONG THEMSELVES AND OTHERS IN ORDER TO CONCEAL THEIR UNLAWFUL AND UNCONSTITUTIONAL CONDUCT. SUCH ACTIONS WERE THE DIRECT AND PROXIMATE CAUSE OF PLAINTIFF HARM.

...91) AS A RESULT OF THE ABOVE ACTIONS THE PLAINTIFF DEMAND JUDGMENT AGAINST DEFENDANT OFFICERS IN THE AMOUNT OF ALL DAMAGES, INCLUDING COMPENSATORY DAMAGES AND PUNITIVE DAMAGES, PLUS INTEREST, INJUNCTIVE RELIEF, SUCH OTHER REASONABLE A ATTORNEY FEES AND COSTS UNDER 42 U.S.C. SECTION 1988.

COUNT 11
SUPPLEMENT STATE LAW CLAIM AGAINST DEFENDANT OFFICERS
CONSPIRACY

...92) PARAGRAPHS 1 THROUGH 91 ARE INCORPORATED HEREIN BY REFERENCE AS THOUGH FULLY SET FORTH.

...93) DEFENDANT OFFICERS ACTING IN CONCERT AND CONSPIRACY, COMMITTED ACTS IN VIOLATION OF THE PLAINTIFF CONSTITUTIONAL RIGHTS AND AGAINST THE LAWS OF PENNSYLVANIA. THE DEFENDANT OFFICERS MADE STATEMENTS AMONG THEMSELVES AND OTHERS IN ORDER TO CONCEAL THEIR UNLAWFUL AND CONSTITUTIONAL CONDUCT.

...94) AS A RESULT OF THE ABOVE ACTIONS THE PLAINTIFF DEMAND JUDGMENT AGAINST DEFENDANT OFFICERS IN THE AMOUNT OF ALL DAMAGES, INCLUDING COMPENSATORY DAMAGES AND PUNITIVE DAMAGES, PLUS INTEREST, INJUNCTIVE RELIEF, SUCH OTHER RELIEF AS APPEARS REASONABLE AND JUST, AS WELL AS REASONABLE ATTORNEY FEES AND COSTS UNDER 42 U.S.C. SECTION 1988.

COUNT 12
SUPPLEMENTAL CLAIM OF INTENTIONAL INFLICTION OF
EMOTIONAL DISTRESS AGAINST ALL DEFENDANT OFFICERS

...95) PARAGRAPHS 1 THROUGH 94 ARE INCORPORATED HEREIN BY REFERENCE AS THOUGH FULLY SET FORTH.

...96) PLAINTIFF WAS DAMAGED AND INJURED AS SET FORTH ABOVE BY DEFENDANT OFFICERS IN THAT THEY INTENTIONALLY AND/OR RECKLESSLY CAUSED PLAINTIFF SEVER EMOTIONAL DISTRESS BY THEIR EXTREME AND OUTRAGEOUS CONDUCT.

...97) AS A RESULT OF THE ABOVE ACTIONS THE PLAINTIFF DEMAND JUDGMENT AGAINST DEFENDANT OFFICERS IN THE AMOUNT OF ALL DAMAGES, INCLUDING COMPENSATORY DAMAGES AND PUNITIVE DAMAGES, PLUS INTEREST, INJUNCTIVE RELIEF, SUCH OTHER RELIEF AS APPEARS REASONABLE AND JUST, AS WELL AS REASONABLE ATTORNEY FEES AND COSTS UNDER 42 U.S.C. SECTION 1988.

COUNT 13
SUPPLEMENTAL CLAIM OF NEGLIGENT INFLICTION OF
EMOTIONAL DISTRESS AGAINST ALL DEFENDANTS OFFICERS

...98) PARAGRAPHS 1 THROUGH 97 ARE INCORPORATED HEREIN BY REFERENCE AS THOUGH FULLY SET FORTH.

...99) PLAINTIFF WAS DAMAGED AND INJURED AS SET FORTH ABOVE BY DEFENDANT OFFICERS IN THAT THEY NEGLIGENTLY CAUSED PLAINTIFF SEVERE EMOTIONAL DISTRESS RESULTED IN THE MANIFESTATION OF PHYSICAL SYMPTOMS.

---

...100) AS A RESULT OF THE ABOVE ACTIONS THE PLAINTIFF DEMAND JUDGMENT AGAINST DEFENDANT OFFICERS IN THE AMOUNT OF ALL DAMAGES, PLUS INTEREST, INCLUDING COMPENSATORY DAMAGES AND PUNITIVE DAMAGES, PLUS INTEREST, INJUNCTIVE RELIEVE, SUCH OTHER RELIEF AS APPEARS REASONABLE AND JUST, AS WELL AS REASONABLE ATTORNEY FEES AND COSTS UNDER 42 U.S.C. SECTION 1988.

COUNT 14
42 U.S.C. SECTION 1983 AGAINST DEFENDANT CITY OF PHILADELPHIA

...101) PARAGRAPHS 1 THROUGH 100 ARE INCORPORATED HEREIN BY REFERENCE AS THOUGH FULLY SET FORTH.

...102) PLAINTIFF WAS DAMAGED AND INJURED ASSET FORTH ABOVE UNDER 42 U.S.C. SECTION 1983 BY DEFENDANT OFFICERS IN THAT THEY, AS DESCRIBED IN DETAIL IN PRECEDING PARAGRAPHS, VIOLATED PLAINTIFF CONSTITUTIONAL RIGHTS WHILE ACTING UNDER COLOR OF LAW. PRIOR TO OCTOBER 31,2013 THE CITY OF PHILADELPHIA DEVELOPED AND MAINTAINED POLICIES AND/OR CUSTOMS EXHIBITING DELIBERATE INDIFFERENCE TO THE CONSTITUTIONAL RIGHTS OF PERSONS IN THE CITY OF PHILADELPHIA, WHICH CAUSED THE VIOLATION OF PLAINTIFF RIGHTS.

...103) IT WAS THE POLICY AND/OR CUSTOM OF THE CITY OF PHILADELPHIA TO COVER-UP AND AVOID DETECTION OF IMPROPER AND ILLEGAL POLICE ACTIVITY, INCLUDING EXCESSIVE FORCE, UNLAWFUL DETENTION, FAILURE TO INTERVENE AGAINST OTHER OFFICERS ILLEGAL CONDUCT, FALSE IMPRISONMENT, ASSAULT AND BATTERY, ROBBERY AND INFLICTION OF EMOTIONAL DISTRESS.

TRULINCS 53960066 - MCFADDEN, LARUE - Unit: PHL-G-N

FROM: 53960066
TO: Cargen, Danielle; Cigainero, Margeaux; Mcfadden, Tiana; Publishing, Infinity
SUBJECT: PAGE 4
DATE: 07/12/2018 03:29:54 PM

...104) IT WAS THE POLICY AND/OR CUSTOM OF THE CITY OF PHILADELPHIA TO FAIL TO SUFFICIENTLY SUPERVISE AGAINST, TRAIN AND/OR RE-TRAIN AGAINST, AND DISCIPLINE AGAINST ILLEGAL POLICE ACTIVITY, INCLUDING BUT NO LIMITED TO EXCESSIVE FORCE, UNLAWFUL DETENTION, FAILURE TO INTERVENE AGAINST OTHER OFFICERS ILLEGAL CONDUCT, ASSAULT AND BATTERY, ROBBERY, FALSE IMPRISONMENT, AND INFLICTION OF EMOTIONAL DISTRESS.

...105) THERE HAS BEEN A LONGSTANDING HISTORY, WHICH WAS BEEN EXTENSIVELY DOCUMENTED DURING THE 1980'S AND EARLY 1990'S, AND CONCURRENT WITH THE ARREST BY THE PPD,THERE WAS WITHIN THE PHILADELPHIA POLICE DEPARTMENT A PATTERN, PRACTICE, AND CUSTOM OF VIOLATING THE CONSTITUTIONAL RIGHTS OF CRIMINAL SUSPECTS AND OTHERS, INCLUDING SYSTEMIC VIOLATIONS OF THE FORTH AND FOURTEENTH AMENDMENTS. OFFICERS ENGAGING IN RAMPANT ILLEGAL CONDUCT IN NARCOTICS INVESTIGATIONS AND ARRESTS.ON THREE SEPARATE OCCASIONS IN THE 1980'S COURTS IN THE EASTERN DISTRICT OF PENNSYLVANIA ISSUED ORDERS ENJOINING THE POLICE DEPARTMENT FROM ENGAGING IN THESE PRACTICES. SEE: CLIETT V. CITY OF PHILADELPHIA,C.A. NO. 85-1846 (E.D.PA.1985) (CONSENT DECREE ARISING OUT OF " OPERATION COLD TURKEY," THAT RESULTED IN THE UNLAWFUL ARREST AND DETENTION OF 1500 INDIVIDUALS IN DRUG ENFORCEMENT PRACTICES): SPRING GARDEN NEIGHBORS V. CITY OF PHILADELPHIA, 614 F.SUPP. 1350 (E.D. PA. 1985) (enjoining police sweeps of LATINO in SPRING GARDEN area in a homicide investigation); ARRINGTON V. CITY OF PHILADELPHIA, C.A. NO. 88-2264(E.D. PA. 1988) (enjoining stops, detentions and searches of AFRICA- AMERICAN MEN DURING INVESTIGATION OF THE CENTER CITY STALKER").AND A NON-EXHAULSTIVE LIST OF SUCH CONDUCT INCLUDES:

A. IN THE EARLY 1980'S IN THE " ONE SQUAD SCANDAL " A GROUP OF PHILADELPHIA NARCOTICS OFFICERS WERE CONVICTED OF SELLING DRUGS THAT THEY HAD STOLEN FROM DEALERS.

B. DURING THE DECADE BETWEEN 1980-1989, A LIEUTENANT AND THREE OFFICERS FROM ANOTHER DRUG UNIT, " THE FIVE SQUAD," ENGAGED IN CONDUCT INCLUDING THE THEFT OF DRUGS AND OVER $ 280,000.00 THAT RESULTED IN FEDERAL CONVICTIONS FOR, INTER ALIA, RACKETEERING.

C. THEREAFTER IN THE LATE 1980'S AND EARLY 1990'S A NARCOTICS SQUAD OPERATING OUT OF THE 39TH POLICE DISTRICT IN PHILADELPHIA (THE SAME DISTRICT WHERE THE TALLEY RAPE AND MURDER OCCURRED) ENGAGED IN WIDESPREAD UNCONSTITUTIONAL PRACTICES, INCLUDING FABRICATION OF SEARCH AND ARREST WARRANTS AND OTHER FALSE ALLEGATIONS OF CRIMINAL CONDUCT, PLANTING OF EVIDENCE ON SUSPECTS, COERCIVE AND PHYSICALLY ABUSIVE INTERROGATIONS, AND THEFT OF MONEY AND DRUGS. THIS SQUAD, LEAD BY OFFICER JOHN BAIRD, ENGAGED IN THESE PRACTICES FOR YEARS AND VIOLATED THE RIGHTS OF THOUSANDS OF PERSONS, DUE TO THE DELIBERATE INDIFFERENCE OF THE PHILADELPHIA POLICE DEPARTMENT, INCLUDING THE DISREGARD OF CREDIBLE COMPLAINTS OF (IAD) AND DISTRICT ATTORNEY, DELIBERATELY BIASED INTERNAL INVESTIGATIONS, AND A PRACTICE AND CUSTOM OF EXNERATING POLICE OFFICERS REGARDLESS OF THE EVIDENCE OF MISCONDUCT. THIS SYSTEMIC AND UNCONSTITUTIONAL PRACTICE AND CUSTOM WAS ENDED ONLY UPON INVESTIGATION BY THE F.B.I., IN OR AROUND FEBRUARY 1995, PHILADELPHIA POLICE OFFICER JOHN BAIRD AND FIVE OTHER MEMBERS OF THE 39TH POLICE DISTRICT WERE FEDERALLY PROSECUTED AND ULTIMATELY SENTENCED FOR VIOLATING THE RIGHTS OF, AND STEALING MONEY FROM, OVER 40 PHILADELPHIAS. THESE OFFICERS PLANTED DRUGS ON INNOCENT INDIVIDUALS, CONDUCTED UNREPORTED RAIDS, AND STOLE FROM SUSPECTS. AS A RESULT OF THIS PATTERN OF POLICE MISCONDUCT THAT WAS EFFECT AT THE TIME OF PLAINTIFF ARREST.

D. IN 1997, FEDERAL DRUG CONVICTIONS WERE OVER TURNED AS A RESULT OF A 1998 INTERNAL AFFAIRS FINDING THAT NARCOTICS OFFICER JOHN BOUCHER WAS A POTENTIALLY CORRUPT POLICE OFFICER.

E. IN THE FIVE YEARS, NUMEROUS NARCOTICS OFFICERS HAVE IN ENGAGED IN CONDUCT CAUSING THEM TO HAVE BEEN REMOVED FROM THE NARCOTICS ASSIGNMENTS. IN THE LAST FIVE YEARS, AS THE RESULT OF THE SERIES BY THE PHILADELPHIA DAILY NEWS REPORTERS KNOWN AS "TAINTED JUSTICE", PHILADELPHIA POLICE OFFICERS JEFFREY CUJDIK, RICHARD CUJDIK, ROBERT MCDONNELL, THOMAS TOLSTOY, JOSEPH BOLOGNA, AND THOMAS DEABLER HAVE ALL BEEN ASSIGNED TO EITHER DESK DUTY OR NON-NARCOTICS

---

RELATED ASSIGNMENTS. THOSE OFFICERS ENGAGED IN THE RAIDS OF SMALL CONVENIENCE SHOPS IN PHILADELPHIA IN WHICH THEY DISABLED SURVEILLANCE SYSTEMS TO HIDE THEIR CONDUCT , WHICH INCLUDED THEFT OF CASH AND GROCERIES. JEFFREY CUJDIK ROUTINELY ALLEGED CRIMINAL BEHAVIOR IN SEARCH WARRANTS INVOLVING A CONFIDENTIAL INFORMANT WHO SUBSEQUENTLY DENIED HAVING PROVIDED INFORMATION OR SERIES ON MANY OF THE CASES IN WHICH CUJDIK AFFIRMED HE HAD.

F. DECEMBER 3, 2012, THE DISTRICT ATTORNEY SETH WILLIAMS OFFICE OF PHILADELPHIA WAS REFUSING TO PROSECUTE OR CHARGE CASES OR APPROVE ANY SEARCH OR ARREST WARRANTS IN WHICH THE FOLLOWING OFFICER ARE OR WERE INVOLVED:

A. POLICE OFFICER THOMAS LICIARDELLO;
B. POLICE OFFICER BRAIN REYNOLDS;
C. POLICE OFFICER JOHN SPEISER;
D. POLICER OFFICER MICHAEL SPICER;
E. POLICE OFFICER PERRY BETTS;
F.LIEUTENANT ROBERT OTTO

...106)THIS DECISION RESTED ON KNOWLEDGE THAT SOME AND/ OR ALL OF THE DEFENDANTS OFFICERS HAD ENGAGED IN CONDUCT RAISING QUESTIONS ABOUT THEIR INTEGRITY AND LAW- ABIDINGNESS WHILE ON DUTY.

...107) IN 2014, AFTER FURTHER PROOF OF THIS POLICY, PRACTICE, AND CUSTOM WAS PROVIDED TO THE POLICE DEPARTMENT, THE DISTRICT ATTORNEY, AND THE CITY OF PHILADELPHIA, THE POLICE DEPARTMENT ISSUED DIRECTIVE 151( JANUARY 1, 2014), THAT PROVIDED LEGAL STANDARDS FOR THE DETENTION AND INTERVIEWS OF WITNESSES AND THE DETENTION AND INTERROGATION OF SUSPECTS BY POLICE DETECTIVES.

...108) IN 2016, ANTHONY WRIGHT FILED A LAW SUIT ON THE CITY OF PHILADELPHIA AND OFFICERS OF THE HOMICIDE UNIT BECAUSE OF THERE UNCONSTITUTIONAL VIOLATIONS. THE FOLLOWING OFFICERS WHO WERE INVOLVED:

A. POLICE OFFICER THOMAS AUGUSTINE
B. POLICE OFFICER THOMAS BURK
C. POLICE OFFICER DAVID BARKER
D. POLICE OFFICER MARTIN DELVIN
E. POLICE OFFICER JAMES MORTON
F. POLICE OFFICER MANUEL SANTIAGO
G. POLICE OFFICER EUGENE WYATT
H. POLICE OFFICER CHARLES MYERS
I. POLICE OFFICER FRANK JASTRZEMBSKI
J. POLICE OFFICER DENNIS DUSAK
K. POLICE OFFICER ANTHONY TOMAINO

THIS DEMONSTRATE THAT THIS MISCONDUCT WAS PERVASIVE WITHIN THE PHILADELPHIA POLICE DEPARTMENT AT TIME OF MR.MCFADDEN UNCONSTITUTIONAL DETENTION AND SEARCH AND UPON INFORMATION AND BELIEF, THE MISCONDUCT DESCRIBED ABOVE WAS COMMITTED WITH THE KNOWLEDGE OF IN FULL VIEW OF PPD SUPERVISORS N HIGH WAY PATROL SUPERVISORS OR BECAUSE DELIBERATED INDIFFERENCE TO THIS MISCONDUCT.

...109) ON OR ABOUT APRIL OF 2018 THE NEW DISTRICT ATTORNEY LARRY KRASNER RELEASE THE NAMES OF AT LEAST 29 OFFICERS N AT LEAST ONE OF THE NAMES THAT FORMER DISTRICT ATTORNEY SETH WILLIAMS RELEASE BACK IN 2012 WAS ON THE NEW LIST 2018.

...110) AT THIS TIME OF THIS INCIDENT, AND FOR SOME YEARS BEFORE, LAW ENFORCEMENT AT THE HIGHEST LEVELS KNEW OF INTEGRITY,CORRUPTION,AND CIVIL RIGHTS VIOLATION ISSUES INVOLVING SOME PHILADELPHIA, OFFICERS. FEDERAL AGENTS AND FEDERAL PROSECUTOR KNEW. THE CURRENT POLICE COMMISSIONER, HIS PREDECESSORS, AND SOME OF HIS SUBORDINATES KNEW. FORMER DISTRICT ATTORNEY SETH WILLIAMS AND FORMER DISTRICT ATTORNEY LYNN ABRAHAM AND SOME OF HER SUBORDINATES, AS WELL AS HER SUCCESSOR IN OFFICE KNEW THE BASIS OF THIS KNOWLEDGE WAS INFORMATION FROM MULTIPLE SOURCES INCLUDING, BUT NOT LIMIT TO, FEDERAL INVESTIGATIONS, INTERNAL INVESTIGATIONS, QUESTIONS RAISED BY STATE AND FEDERAL PROSECUTORS AND OTHERS SOURCES.

...111) IT WAS THE POLICY AND/ OR CUSTOM OF THE CITY OF PHILADELPHIA TO INADEQUATELY SUPERVISE AND

---

TRAIN ITS POLICE OFFICERS, INCLUDING THE DEFENDANT OFFICERS, AGAINST A CODE OF SILENCE OR " BLUE CODE" OF OFFICERS REFUSING TO INTERVENE AGAINST OR PROVIDE TRUTHFUL INFORMATION AGAINST CONSTITUTIONAL VIOLATIONS AND OTHER UNLAWFUL MISCONDUCT COMMITTED BY THEIR FELLOW OFFICERS. A COURT IN THE EASTERN DISTRICT ENTERED A CONSENT DECREE REQUIRING WIDE RANGING REFORMS IN THE PHILADELPHIA POLICE DEPARTMENT, AND IN PARTICULAR PROVIDING FOR SPECIFIC LIMITATIONS ON THE INVESTIGATIVE PRACTICES AND POLICIES OF THE PHILADELPHIA POLICE DEPARTMENT.SEE NAACP V. CITY OF PHILADELPHIA, C.A. NO. 96-6045.

...113) IN SUMMARY, AT THE TIME OF THE ARREST AND PROSECUTION OF TALLI J. MCFADDEN, THE PPD HAD A PRACTICE, POLICY, AND CUSTOM OF:

A. ENGAGING IN UNLAWFUL INTERROGATION OF SUSPECTS, WITNESS DETENTIONS AND INTERROGATIONS, PLANTING OF EVIDENCE, FABRICATION OF WITNESS AND SUSPECT STATEMENTS, AND FAILING TO DISCLOSE EXCULPATORY EVIDENCE;

B. FAILING TO TAKE APPROPRIATE DISCIPLINARY OR OTHER CORRECTIVE ACTIONS WITH RESPECT TO POLICE OFFICERS WHO ENGAGED IN ILLEGAL OR UNCONSTITUTIONAL CONDUCT;

C. FAILING TO PROPERLY TRAIN AND SUPERVISE OFFICERS WITH RESPECT TO THE CONSTITUTIONAL LIMITATIONS ON THEIR INVESTIGATIVE, DETENTION, SEARCH AND ARREST POWERS;

D. IGNORING, WITH DELIBERATE INDIFFERENCE, SYSTEMIC PATTERNS OF POLICE MISCONDUCT AND ABUSE OF CIVILIANS' RIGHTS IN THE COURSE OF POLICE INVESTIGATIONS AND PROSECUTIONS OF CRIMINAL SUSPECTS AND DEFENDANTS; INCLUDING UNLAWFUL POLICE INTERROGATIONS, SEARCHES, AND ARRESTS, COERCION OF WITNESSES, FALSIFYING AND FABRICATION OF EVIDENCE AND SUPPRESSION OF EXCULPATORY EVIDENCE;

E. FAILING TO PROPERLY SANCTION OR DISCIPLINE PPD OFFICERS, WHO ARE AWARE OF AND CONCEAL AND/OR AID AND ABET VIOLATIONS OF CONSTITUTIONAL RIGHTS OF INDIVIDUALS BY OTHER PPD OFFICERS, THEREBY CAUSING ENCOURAGING PHILADELPHIA POLICE, INCLUDING THE DEFENDANT OFFICERS IN THIS CASE, TO VIOLATE THE RIGHTS OF CITIZENS SUCH AS TALLI J. McFADDEN.

AT THE TIME OF THE ARREST AND PROSECUTION OF TALLI J. McFADDEN, AND FOR MANY YEARS BEFORE AND THEREAFTER, THE PPD AND THE CITY OF PHILADELPHIA HAS BEEN DELIBERATELY INDIFFERENT TO THE NEED TO TRAIN, SUPERVISE, AND DISCIPLINE POLICE OFFICERS. THE INTERNAL AFFAIRS DIVISION (IAD) OF THE PPD HAS FAILED TO PROVIDE AND INTERNAL DISCIPLINARY MECHANISM THAT IMPOSES MEANINGFUL DISCIPLINARY AND REMEDIAL ACTIONS.

A. EXCESSIVE AND CHRONIC DELAYS IN RESOLVING DISCIPLINARY COMPLAINTS;

B. A LACK OF CONSISTENT, RATIONAL AND MEANINGFUL DISCIPLINARY AND REMEDIAL ACTIONS;

C. A FAILURE TO EFFECTIVELY DISCIPLINE SUBSTANTIAL NUMBERS OF OFFICERS WHO WERE FOUND TO HAVE ENGAGED IN MISCONDUCT;

D. THE PPD'S INTERNAL INVESTIGATORY PROCESS FELL BELOW ACCEPTED PRACTICES AND WAS ARBITRARY AND INCONSISTENT;

E. THE PPD'S DISCIPLINE, AS PRACTICED, WAS INCIDENT-BASED RATHER THEN PROGRESSIVE; THUS, REPEAT VIOLATORS WERE NOT PENALIZED IN PROPORTION TO THE NUMBER OF VIOLATIONS;

F. THE CONDUCT OF IAD INVESTIGATIONS DEMONSTRATED THAT PPD INTERNAL AFFAIRS PERSONNEL WERE NOT ADEDATUELY TRAINED AND SUPERVISED IN THE PROPER CONDUCT OF SUCH INVESTIGATIONS;

G. A GLOBAL ANALYSIS OF IAD'S INVESTIGATORY PROCEDURES INDICATED A PATTERN OF ADMINISTRATIVE CONDUCT WHERE THE BENEFIT OF THE DOUBT WAS GIVEN TO THE OFFICER RATHER THAT THE COMPLAINANT;

H. SERIOUS DEFICIENCIES IN THE QUALITY OF IAD INVESTIGATIONS AND THE VALIDITY OF THE IAD FINDINGS AND CONCLUSIONS;

---

FROM: 53960066
TO:
SUBJECT:
DATE: 07/20/2018 07:41:58 PM

...114) AS A RESULT OF THE ABOVE ACTIONS THE PLAINTIFF DEMAND JUDGMENT AGAINST DEFENDANTS OFFICERS IN THE AMOUNT OF ALL DAMAGES, INCLUDING COMPENSATORY DAMAGES AND PUNITIVE DAMAGES, PLUS INTEREST, INJUNCTIVE RELIEF, SUCH OTHER RELIEF AS APPEARS REASONABLE AND JUST, AS WELL AS REASONABLE ATTORNEY FEES AND COSTS UNDER 42 U.S.C. SECTION 1988.

COUNT 15
42 U.S.C. 1983 CIVIL RIGHTS CONSPIRACY

AGAINST ALL INDIVIDUAL DEFENDANTS

...115) PLAINTIFF INCORPORATES BY REFERENCE ALL OF THE FOREGOING PARAGRAPHS.

...116) THE INDIVIDUAL DEFENDANTS, ACTING WITHIN THE SCOPE OF THEIR EMPLOYMENT AND UNDER COLOR OF STATE LAW, AGREE AMONG THEMSELVES AND WITH OTHER INDIVIDUALS, INCLUDING AGENT FEAR AND AGENT HUNTER, AND APPLE INC. TO ACT IN CONCERT IN ORDER TO DEPRIVE MR. MCFADDEN OF HIS CLEARLY ESTABLISHED FOURTH, FIFTH, THIRTEENTH, AND FOURTEENTH AMENDMENT RIGHTS TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES, FALSE ARREST, FALSE IMPRISONMENT, MALICIOUS PROSECUTION, DEPRIVATION OF LIBERTY WITHOUT DUE PROCESS OF LAW, SELF-INCRIMINATION , AND TO A FAIR TRIAL.

...117) IN FURTHERANCE OF THE CONSPIRACY, THE DEFENDANTS ENGAGED IN AND FACILITATED NUMEROUS OVERACTS, INCLUDING WITHOUT LIMITATION, THE FOLLOWING:
A. INTENTIONALLY OR WITH DELIBERATE INDIFFERENCE FAILING TO COMPLY WITH THEIR DUTY TO DISCLOSE BRADY AND IMPEACHMENT MATERIAL DURING THE PENDENCY OF THE CASE;
B. WRONGFULLY PROSECUTING MR. MCFADDEN WHILE KNOWING THAT THEY LACKED PROBABLE CAUSE ; AND
C. COMMITTING PERJURY DURING HEARINGS.
D. APPLE DID NOT DO THE SAME IN THE TERRORIST ACTIVITY IN THAT LANDMARK ISSUE HOW DID APPLE COMPLY IN PLAINTIFF CASE.
E. BY APPLE ASSIST GOVERNMENT AND OR LAW ENFORCEMENT IS A VIOLATION OF THE MANUFACTURING AGREEMENT WITH THE CUSTOMER AND VIOLATED PLAINTIFF CIVIL RIGHTS.
F. EXTRACTING PLAINTIFF DATA ON EXPIRED WARRANT.

...118) DEFENDANTS ACTS AND OMISSIONS AS DESCRIBED IN THE PRECEDING PARAGRAPHS , WERE THE DIRECT AND PROXIMATE CAUSE OF MR. MCFADDEN INJURIES. DEFENDANTS KNEW, OR SHOULD HAVE KNOWN , THAT THEIR CONDUCT WOULD RESULT IN MR. MCFADDEN'S WRONGFUL ARREST, PROSECUTION , AND INCARCERATION.

COUNT 16
42 U.S.C. 1985 (3) CONSPIRACY

AGAINST DEFENDANT APPLE INC.

...118-A) PLAINTIFF INCORPORATES BY REFERENCE ALL OF FOREGOING PARAGRAPHS.

...119) THE FORESAID DEFENDANT DID EACH OF THEM IN THE FASHION EXPRESSED HEREIN, AND AT VARIOUS OTHER TIMES THAT DISCOVERY WILL DISCLOSE, DID AGREE AMONG THEMSELVES AND CONSPIRED TO VIOLATE PLAINTIFF CIVIL RIGHTS AND TO DENY PLAINTIFF EQUAL PROTECTION OF THE LAW OF THE UNITED STATES IN VIOLATION OF 42 U.S.C 1985(3) AND AS A RESULT, PLAINTIFF WAS DAMAGED, FORCED TO INCUR COSTS AND EXPENSES OF SUIT AND HAS SUFFERED PAIN INJURY AND EMOTIONAL DISTRESS, INVASION OF PRIVACY, FROM WANTON AND RECKLESS CONDUCT OF DEFENDANTS.

...120) AS TO DEFENDANT , APPLE INC. PLAINTIFF ALLEGES THAT APPLE INC. ACTIONS AFORESAID BOTH ALONE IN CONCERT WITH OTHER DEFENDANTS AND WHO WILL BE DISCLOSED IN DISCOVERY VIOLATED PLAINTIFF EIGHT, FOURTH, FIFTH, , FOURTEENTH AMENDMENTS BY CIRCLE VENTING THE LAW, AS A PRIVATE COMPANY AS STATE LAW.

---

COUNT 17
42 U.S.C. 1983 FAILURE TO INTERVENE

AGAINST ALL INDIVIDUAL DEFENDANTS

...121) PLAINTIFF INCORPORATES BY REFERENCE ALL OF THE FOREGOING PARAGRAPHS.

...122) BY THEIR CONDUCT AND UNDER COLOR OF STATE LAW, THE INDIVIDUAL DEFENDANTS, ACTING WITHIN THE SCOPE OF THEIR EMPLOYMENT WITH THE PPD, HAD OPPORTUNITIES TO INTERVENE ON BEHALF OF MR. MCFADDEN TO PREVENT HIS FALSE ARREST, MALICIOUS PROSECUTION , FALSE IMPRISONMENT, AND DEPRIVATION OF LIBERTY WITHOUT DUE PROCESS OF LAW, BUT WITH DELIBERATE INDIFFERENCE, DECLINED TO DO SO.

...123) THESE DEFENDANTS' FAILURES TO INTERVENE VIOLATED MR. MCFADDEN CLEARLY ESTABLISHED CONSTITUTIONAL RIGHT TO BE FREE FROM UNREASONABLE SEARCH AND SEIZURE AND NOT TO BE DEPRIVED OF LIBERTY WITHOUT DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTH AND FOURTEENTH AMENDMENTS. NO REASONABLE POLICE OFFICER IN 2013 WOULD HAVE BELIEVED THAT FAILING TO INTERVENE TO PREVENT THESE DEFENDANTS FROM COERCING AND FABRICATING INCULPATORY EVIDENCE , USING COERCION AND/OR DIRECT SUGGESTION TO OBTAIN FALSE WITNESS STATEMENTS, WITHHOLDING MATERIAL EXCULPATORY AND/OR IMPEACHMENT EVIDENCE, DELIBERATELY FAILING TO CONDUCT A CONSTITUTIONALLY ADEQUATE INVESTIGATION , AND CAUSING MR. MCFADDEN TO BE ARRESTED AND PROSECUTED WITHOUT PROBABLE CAUSE, WERE LAWFUL.

...124) DEFENDANTS' ACTS AND OMISSIONS, AS DESCRIBED IN THE PRECEDING PARAGRAPHS, WERE THE DIRECT AND PROXIMATE CAUSE OF MR. MCFADDEN'S INJURIES. DEFENDANTS KNEW, OR SHOULD HAVE KNOWN, THAT THEIR CONDUCT WOULD RESULT IN MR. MCFADDEN'S WRONGFUL ARREST, PROSECUTION , AND INCARCERATION.

COUNT 18
42 U.S.C. 1983 MUNICIPAL LIABILITY CLAIM

AGAINST DEFENDANT CITY OF PHILADELPHIA

...125) PLAINTIFF HEREBY INCORPORATES BY REFERENCE ALL OF THE FOREGOING PARAGRAPHS.

...126) THE CITY OF PHILADELPHIA, BY AND THROUGH ITS FINAL POLICYMAKERS, HAD IN FORCE AND EFFECT DURING TIME OF MR. MCFADDEN'S WRONGFUL ARREST AND PROSECUTION, AND FOR MANY YEARS PRECEDING AND FOLLOWING THIS INVESTIGATION A POLICY, PRACTICE, OR CUSTOM OF UNCONSTITUTIONAL MISCONDUCT IN HOMICIDE AND OTHER CRIMINAL INVESTIGATIONS, INCLUDING IN PARTICULAR THE USE OF COERCIVE TECHNIQUES IN INTERVIEWS AND INTERROGATIONS, TO OBTAIN CONFESSIONS; THE FABRICATION OF INCULPATORY EVIDENCE; THE FABRICATION OF INCRIMINATING STATEMENTS TO GET SEARCH WARRANTS AND WITH HOLDING THAT THERE WAS A OFFICE ON THE SCENE AND WAS VERY UNTRUSTWORTHY POLICE OFFICER WHO STILL WAS WORKING ON CASES AND PATROLLING THE STREETS THAT' WAS BREAKING THE CONSTITUTION OF PENNSYLVANIA.

...127) FINAL POLICYMAKERS FOR THE CITY OF PHILADELPHIA HAD ACTUAL OR CONSTRUCTIVE NOTICE OF THESE PRACTICES , POLICIES , AND CUSTOM , BUT REPEATEDLY FAILED TO MAKE ANY MEANINGFUL INVESTIGATION INTO CHARGES THAT HOMICIDE DETECTIVES , POLICE OFFICERS , NARCOTICS OFFICES , HIGHWAY PATROL OFFICERS , AND VARIOUS AGENCIES AND OFFICERS IN THE CITY OF PHILADELPHIA ,WERE USING COERCIVE TECHNIQUES IN INTERVIEWS AND INTERROGATIONS TO OBTAIN CONFESSIONS ; WITHHOLDING EXCULPATORY EVIDENCE ; FABRICATING INCULPATORY EVIDENCE ; AND, PARTICULARLY, FABRICATING INCRIMINATING STATEMENTS FROM WITNESSES , SUSPECTS , AND ARRESTEES BY COERCION , SUGGESTION , AND FEEDING DETAILS ABOUT THE CRIME, AND FAILED TO TAKE APPROPRIATE REMEDIAL AND/OR DISCIPLINARY ACTIONS TO CURB THIS PATTERN OF MISCONDUCT OF THE DIRTY OFFICERS.

...128) SUCH UNCONSTITUTIONAL MUNICIPAL CUSTOMS , PRACTICES AND/OR POLICIES WERE THE MOVING FORCE BEHIND MR. McFadden's UNCONSTITUTIONAL ARREST ILLEGAL DETENTION , AND ILLEGAL SEARCH CAUSING HIS ARREST AND PROSECUTION TO CONTINUE TO TARGET AND HARM MR. MCFADDEN AS WELL AS ALL

---

THE OTHER INJURIES AND DAMAGES SET FORTH ABOVE.

COUNT 19
42 U.S.C 1983 SUPERVISORY LIABILITY CLAIM

AGAINST DEFENDANTS KURTH ,SGT. MORACE

...129) PLAINTIFF INCORPORATES BY REFERENCE ALL OF THE FOREGOING PARAGRAPHS AND FURTHER ALLEGES:

...130) DEFENDANTS, INCLUDING HIGHWAY PATROL OFFICER REID, MURPHY, FLYNN, QUIRPLE , AND ORTIZ ACTED WITH IMPUNITY IN AN ENVIRONMENT IN WHICH THEY WERE NOT ADEQUATELY TRAIN, SUPERVISED, OR DISCIPLINED BY DEFENDANT
DEFENDANTS KURTH AND MORACE, BOTH IN THIS CASE AND AS A MATTER OF PRACTICE AND CUSTOM.

...131) DEFENDANT KURTH AND MORACE ACTED RECKLESSLY AND WITH DELIBERATED INDIFFERENCE TO MR. MCFADDEN CONSTITUTIONAL RIGHTS BY FAILING TO ADEQUATELY TRAIN, SUPERVISE, AND DISCIPLINE THE PPD OFFICER , HIGHWAY PATROL NARCOTICS OFFICERS ASSIGNED TO THIS INVESTIGATION , INCLUDING HIGHWAY PATROL OFFICER REID, MURPHY, AND FLYNN, QUIRPLE, AND ORTIZ , THEREBY ALLOWING AND CAUSING THESE OFFICER TO DEPRIVE MR. MCFADDEN OF HIS CLEARLY ESTABLISHED CONSTITUTIONAL RIGHTS , INCLUDING HIS RIGHTS TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES, FALSE ARREST, FALSE IMPRISONMENT , MALICIOUS PROSECUTION , AND DEPRIVATION OF LIBERTY WITHOUT DUE PROCESS OF LAW, SELF-IMPRISONMENT , AND TO A FAIR HEARING OR TRIAL.

...132) DEFENDANT KURTH, MORACE WAS BOTH PERSONALLY INVOLVED IN THE INVESTIGATION OF MR. MCFADDEN AND DIRECTLY SUPERVISED THE INVESTIGATIVE ACTS TAKEN BY THE HIGHWAY PATROL OFFICERS, NARCOTICS' OFFICES AND THE PPD INCLUDING THE K-9 BRIX , QUIRPLE , MURPHY , FLYNN , REID , AND ORTIZ.

...133) THE RECKLESS AND DELIBERATELY INDIFFERENCE CONDUCT OF DEFENDANTS KURTH, MORACE VIOLATED HIS CLEARLY ESTABLISHED DUTY, IN 2013, TO SUPERVISE THE DEFENDANTS OFFICERS, AND NO REASONABLE POLICE SUPERVISOR IN 2013 WOULD HAVE BELIEVED THAT RECKLESS AND DELIBERATELY INDIFFERENCE SUPERVISION IN THE FACE OF ACTUAL OR CONSTRUCTIVE NOTICE OF MISCONDUCT BY THEIR SUBORDINATE OFFICERS WAS LAWFUL.

...134) DEFENDANTS KURTH,MORACES ACTS OMISSIONS, AS DESCRIBED IN THE PRECEDING PARAGRAPHS, WERE THE DIRECT AND PROXIMATE CAUSE OF MR. MCFADDEN INJURIES. DEFENDANT KURTH, MORACE KNEW, OR SHOULD HAVE KNOWN , THAT HIS CONDUCT WOULD RESULT IN MR. . MCFADDEN WRONGFUL ARREST , PROSECUTION , AND INCARCERATION.

COUNT 20
MALICIOUS PROSECUTION UNDER PENNSYLVANIA STATE LAW

AGAINST ALL INDIVIDUAL DEFENDANTS

...135) PLAINTIFF HEREBY INCORPORATES BY REFERENCE ALL OF THE FOREGOING PARAGRAPHS.

...136) THE INDIVIDUAL DEFENDANTS INITIATED OR CONTINUED PROCEEDINGS AGAINST MR. MCFADDEN , WITHOUT PROBABLE CAUSE, WITH MALICE OR SPECIFIC INTENT TO INJURE , AND THE PROCEEDINGS ULTIMATELY TERMINATED IN MR. MCFADDEN'S FAVOR ON APRIL 9, 2015 , AND WHEN THE CASE WAS DISMISS HE WAS ACQUITTED ON ALL CHARGES. THEN PLAINTIFF HAD A HEARING IN THE FEDERAL COURTS ON THE SAME EVIDENCE ON NOVEMBER 3,2016 THE GOVERNMENT SAID ON THE RECORD THEY WILL NOT USE THE EVIDENCE FROM THAT ARREST. NOW THAT PLAINTIFF IS AWARE OF THE DO NOT ALL LIST 2018 WITH OFFICER ANGEL ORTIZ. THINGS CHANGE ONCE AGAIN.

...137) AS A RESULT OF THIS MALICIOUS PROSECUTION , MR. MCFADDEN SUSTAINED THE INJURIES AND DAMAGES SET FORTH ABOVE.

COUNT 21

---

PRAYER FOR RELIEF

...A) WHEREFORE, PLAINTIFF TALLI J. MCFADDEN RESPECTFULLY PRAY THAT THIS COURT COURT ENTER JUDGMENT AS FOLLOWS:

...B) THAT THE COURT AWARD PLAINTIFF TALLI J. MCFADDEN A DECLARATION THAT THE ACTS AND OMISSIONS DESCRIBED HEREIN VIOLATE HIS RIGHTS UNDER THE CONSTITUTION AND LAW OF THE UNITED STATES, AND

...C) THAT THE COURT AWARD COMPENSATORY DAMAGES TO PLAINTIFF AND AGAINST ALL DEFENDANTS, JOINTLY AND SEVERALLY, IN AN AMOUNT TO BE DETERMINED AT TRIAL;

...D) THAT THE COURT AWARD PUNITIVE DAMAGES TO PLAINTIFF; AND AGAINST ALL INDIVIDUAL DEFENDANTS IN THEIR INDIVIDUAL CAPACITY, IN AN AMOUNT TO DETERMINED AT TRIAL, THAT WILL DETER SUCH CONDUCT BY DEFENDANTS IN THE FUTURE;

...E) FOR A TRIAL BY JURY;

...F) FOR PER-JUDGMENT AND POST-JUDGMENT INTEREST AND RECOVERY OF PLAINTIFFS COSTS, INCLUDING REASONABLE ATTORNEY FEES PURSUANT TO 42. U.S.C.1988 FOR ALL 42 U.S.C. 1983 CLAIMS; AND

...G) FOR ANY AND ALL OTHER RELIEF TO WHICH PLAINTIFF MAY BE ENTITLED.

...H) PLAINTIFF ALSO SEEK RECOVERY OF COST IN THIS SUIT, AND LAWYER FEES FROM 2013 .

...I) PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES AND CLAIMS SET FORTH IN THIS COMPLAINT, PURSUANT TO THE SEVENTH AMENDMENT OF THE U.S. CONSTITUTION AND FEDERAL RULE OF CIVIL PROCEDURE 38(B).

... date 8-29-18

Talli J. McFadden

... TALLI J. MCFADDEN # 53960-066

... FEDERAL DETENTION CENTER PHILADELPHIA
... P.O. BOX 562
... PHILADELPHIA, PA. 19105

... VERIFICATION
... I HAVE READ THE FOREGOING COMPLAINT AND HEREBY VERIFY THAT THE MATTERS ALLEGED THEREIN ARE TRUE, EXCEPT AS TO MATTERS ALLEGED ON INFORMANT AND BELIEF, AND, AS THOSE, I BELIEVE THEM TO BE TRUE. I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED AT PHILADELPHIA, PA. ON THIS DATE: 8-29-18

NAME: Talli McFadden

# EXHIBITS

AO 106 (Rev. 04/10) Application for a Search Warrant (Katayoun M. Copeland authorizing)

Exhibits (A)

# UNITED STATES DISTRICT COURT

**Eastern District of Pennsylvania**

In the Matter of the Search of
One (ATT) Mobility Apple iPhone, serial number DNQKCFAVPON, IMEI number 013268008132985, black in color.

Case No. 13 - 1288 - M

**Filed Under Seal**

## APPLICATION FOR A SEARCH WARRANT

1. I, Jeffrey Hunter, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property: One (ATT) Mobility Apple iPhone, serial number DNQKCFAVPON, IMEI number 013268008132985, black in color, currently in the custody of the Federal Bureau of Investigation.

Located in the Eastern District of Pennsylvania there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT A

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- [x] evidence of a crime;
- [x] contraband, fruits of crime, or other items illegally possessed;
- [x] property designed for use, intended for use, or used in committing a crime;
- [ ] a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

Title 21 U.S.C. 846, 841(a)(1) (drug conspiracy)

The application is based on these facts: SEE ATTACHED AFFIDAVIT

- [x] Continued on the attached sheet.
- [x] Delayed notice of 30 days (give exact ending date if more than 30 days:) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached affidavit.

[signature]
*Applicant's signature*

Jeffrey Hunter, Federal Bureau of Investigation
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/12/2013

[signature]
*Judge's signature*

City and state: Philadelphia, PA

HON. LINDA K. CARACAPPA,
Magistrate Judge
*Printed name and title*

AO 93 (Rev. 12/09) Search and Seizure Warrant (Katayoun M. Copeland authorizing)

Exhibits (A-1)

# UNITED STATES DISTRICT COURT

Eastern District of Pennsylvania

In the Matter of the Search of One (ATT) Mobility Apple iPhone, serial number DNQKCFAVPON, IMEI number 013268008132985, black in color.

Case No. 13-1288-M

**Filed Under Seal**

## SEARCH AND SEIZURE WARRANT

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the Eastern District of Pennsylvania: One (ATT) Mobility Apple iPhone, serial number DNQKCFAVPON, IMEI number 013268008132985, black in color, currently in the custody of the Federal Bureau of Investigation.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*: SEE ATTACHMENT A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before 11/25/13 *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10 p.m.  ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge HONORABLE LINDA K. CARACAPPA

*(name)*

☑ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☑ for 30 days *(not to exceed 30)*.

☐ until, the facts justifying, the later specific date of ________.

Date and time issued: 11/12/13 1:15 p.m.

*Judge's signature*

City and state: Philadelphia, PA

HON. LINDA K. CARACAPPA
Magistrate Judge
*Printed name and title*

AO 93 (Rev. 12/09) Search and Seizure Warrant (Page 2)

| **Return** | | |
|---|---|---|
| *Case No.:* | *Date and time warrant executed:* | *Copy of warrant and inventory left with:* |
| *Inventory made in the presence of :* | | |
| *Inventory of the property taken and name of any person(s) seized:* | | |

**Certification**

*I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.*

*Date:* ____________________

______________________________
*Executing officer's signature*

______________________________
*Printed name and title*

FD-302 (Rev. 5-8-10)



OFFICIAL RECORD

# FEDERAL BUREAU OF INVESTIGATION

Date of entry 12/11/2014

On November 12, 2013 Federal Search Warrant 13-1288 was issued in the Eastern District of Pennsylvania (EDPA) authorizing the search of a an Apple iPhone, serial number DNQKCFAVPON, IMEI number 013268008132985, black in color, recovered from TALLI MCFADDEN pursuant to his arrest by the PHILADELPHIA POLICE DEPARTMENT (PPD) on November 1, 2013.

~~On November 12, 2013~~ at approximately 1:45 p.m. the warrant was executed by FEDERAL BUREAU OF INVESTIGATION (FBI) Special Agent JEFFREY HUNTER. Upon executing the warrant it was discovered that the phone was locked. The phone was subsequently submitted to the FBI REGIONAL COMPUTER FORENSICS LABORATORY (RCFL), 201 King of Prussia Road, Radnor, PA 19087 by SA HUNTER on November 13, 2014 for examination. Examination by RCFL determined they were unable to process the phone due to it being locked. ~~The phone was subsequently returned to SA HUNTER on November 21, 2013.~~

On October 24, 2014 the phone was sent to APPLE Inc., 1 Infinite Loop, Cupertino, California pursuant a court order issued in the EDPA requiring APPLE to assist law enforcement with the search of the phone.

The phone, along with a thumb drive of search results extracted by APPLE pursuant to their search of the phone was returned to the FBI and was received by SA HUNTER on November 24, 2014.

The search results provided by APPLE were subsequently submitted to the RCFL for examination on November 25, 2014. On December 9, 2014 examination results were provided to SA HUNTER in data disc format.

RCFL results in data disc format were retained in an FD-340 envelope. The cell phone and results provided by APPLE were retained as evidence.

Investigation on 11/12/2013 at Philadelphia, Pennsylvania, United States (In Person)

File # 245D-PH-98243 Date drafted 12/09/2014

by SA Jeffrey Hunter

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

**Hunter, Jeffrey**

**From:** Subpoenas [Subpoenas@apple.com]
**Sent:** Monday, November 18, 2013 12:45 PM
**To:** Hunter, Jeffrey
**Subject:** iOS User Data Extraction, Phildephia IMEI 013268008132887

Hi SA Hunter:

Thank you for providing the signed warrant and court order. Please fax both documents to Apple at 408-974-9316 Attn: iOS Extraction. The faxed request will be submitted for an internal review process. We will provide you an extraction date once all approvals have been received.

Best,
Subpoenas@apple.com
Privacy & Law Enforcement Compliance Team

On Nov 15, 2013, at 1:11 PM, Hunter, Jeffrey <Jeffrey.Hunter@ic.fbi.gov> wrote:

Joann,

Hello, I hope this email finds you well. I am attaching a copy of a federal search warrant and corresponding court order in order to coordinate sending a password protected phone to Apple for examination. I will await further instructions from you regarding any scheduled date to send the devices. Thanks so much.

Have a great weekend,

SA Jeff Hunter
FBI Philadelphia
215-418-4656 (desk)
215-738-9450 (cell)

<Search Warrant 13-1288M & Apple Order.pdf>

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES<br>v.<br>TALLI McFADDEN | CRIMINAL NO. 15-CR-376-3 |

**MOTION TO SUPPRESS EVIDENCE**

Defendant Talli McFadden, by and through his undersigned counsel, hereby moves the Court to enter an order suppressing the direct and derivative evidence that was discovered as a result of the search of his vehicle on November 1, 2013. In support thereof, movant relies upon the attached memorandum of law which is incorporated by reference as if fully set forth herein.

WHEREFORE, defendant requests the Court to grant a hearing on this motion and at the conclusion thereof enter an order suppressing the direct and derivative fruits of the search of his vehicle.

Respectfully submitted,

Date: 7/15/16

/s/ Dennis J. Cogan
Dennis J. Cogan
2000 Market Street
Philadelphia, PA 19102
(215) 545-2400

/s/ Christopher Warren
Christopher D. Warren
1500 Walnut Street
Philadelphia, PA 19102
(215) 546-3750

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES | : | |
| v. | : | CRIMINAL NO. 15-CR-376-3 |
| TALLI McFADDEN | : | |

MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE

## I. INTRODUCTION

Presently before the Court is a motion in which Talli McFadden seeks an order suppressing the direct and derivative fruits of a search of his automobile that was conducted pursuant to a warrant that was issued on the basis of a seizure which a state-court judge found was illegal. Because there is no good reason for this Court to reach a different conclusion here than the one reached before and, indeed, there are compelling grounds for issuance of the exact same ruling in this case, the motion should be granted.

## II. FACTUAL BACKGROUND

As briefly noted above, the legality of the search that is the subject of this motion was previously litigated in the Philadelphia Court of Common Pleas at a suppression hearing that was conducted before the Honorable Paul P. Panepinto on February 17, 2015. According to the testimony presented there, on Halloween night 2013 Officer Jason Reid and his partner received a radio call regarding what he initially said were two black males dressed in dark clothing one of which was in possession of a firearm. See Notes of Testimony ("N.T.") 2/17/15 at pages 5-7.

Upon arriving at the scene, Officer Reid saw Mr. McFadden exiting the driver's side of a 2012 BMW in which he was the only occupant. Id. at page 6. Because Mr. McFadden supposedly fit the description of one of the individuals who was referenced in the radio call, he was stopped by Officer Reid and searched. Although no gun was found, Officer Reid nevertheless decided to have another officer "detain" the defendant so that he (Officer Reid) could inspect the BMW. Id. ("Upon stopping this defendant based off the nature of the radio call, he was stopped. He was cooperative. He didn't resist in any way. I had another brother officer come down, detain him, and I walked over to the BMW I saw him exit"). In addition to Mr. McFadden, a second black male who also fit the description transmitted on the radio call was also stopped at this time about 40 feet away from where the defendant was being detained. Id. at page 7.

Once he reached the BMW, Officer Reid testified that he shined his flashlight through the back window and saw a Nike shoebox which had "two factory holes" cut into it and through which he immediately observed a green leafy substance that he believed to be marijuana. Id. at page 8. Based on this alleged observation, Officer Reid testified that he requested a so-called drug-sniffing dog to be brought to the scene and the dog, once there, alerted to the presence of narcotics in the vehicle. Id. Officer Reid's observations coupled with the positive canine alert were then used to obtain a search warrant for the BMW which, in turn, resulted in the discovery and seizure of seven grams of crack cocaine, 150 grams of marijuana, a scale, Mr. McFadden's passport, and a black iPhone. Thus, according to Officer Reid's direct testimony his lawful seizure of Mr. McFadden led to the plain-view observation of marijuana in a shoebox and the issuance of a valid search warrant for the vehicle following a positive canine alert.

Cross-examination of Officer Reid and the testimony from another officer at the scene that night substantially undercut the validity of this factual scenario. First, it was established that

the initial radio call stated that there were "[t]hree blacks males wearing all black clothing, black hoody, standing in front of 4720 North Penn Street, all armed with guns." Id. at page 10. This, of course, contradicted Officer Reid's testimony that he was looking for two black males and his statement that one male was seen exiting a car while the other was walking some 40 feet away was plainly inconsistent with what had been broadcast on the radio call. Id. at page 11 ("Q. All right. So when you see my client, my client's not standing on a street corner. He's getting out of a car; isn't that right? A. That's correct. Q. And he's by himself, not with two other people; is that right? A. I don't know who he's with. Q. Well, you didn't see anybody standing with him, did you? A. I didn't see anybody in the car with him. No sir. Q. The closest you saw anybody that you actually stopped was like 40 feet away from where you stopped him; isn't that right? A. Approximately"). More importantly, Officer Reid denied that the Nike shoebox was inside of a bag and claimed that he made his supposed plain-view observation of the box's contents from the driver's side of the BMW. Id. at page 12.

The defense then called another officer, Ryan Flynn, who was at the scene that night and he testified that he was there to "[e]valuate for a possible search warrant and to help them applying [for] it." Id. at page 20. According to Officer Flynn, when he shined his flashlight into the passenger side of the vehicle he saw "a white plastic bag, and inside the plastic bag was an orange shoebox." Id. at page 21. The plastic bag, moreover, was not transparent and although the front of the bag was open that opening was visible from the passenger side of the BMW. Id. at page 22 ("Q. All right. And the white bag only had one opening. It wasn't open on two sides; right? A. Oh, the whole top of the shopping bag is open. Q. All right. But that's from the passenger side it's open; is that right? A. That's where I observed it from. The passenger side, yes"). On questioning by the Commonwealth, Officer Flynn did state that from his vantage

point he could see one of the two holes through which Officer Reid claimed to have seen the marijuana in plain view. Id. at page 23 ("Q. Okay. So did you see the two holes in the box? A. I saw it was the one at the time. Q. You saw the one hole? A. Yes"). And while this one hole was not covered by the bag, there was no testimony elicited from Officer Flynn by the prosecutor which corroborated Officer's Reid's claim that marijuana could be seen in plain view through the one hole in the shoebox that Officer Flynn saw. Id. at pages 23-24.

Based upon these conflicts in the testimony, the defense urged Judge Panepinto to reject the version of the facts offered by Officer Reid and find that the detention of Mr. McFadden was unconstitutional and the subsequent search of his vehicle illegal. In a ruling which did precisely that, Judge Panepinto suppressed the evidence that was recovered from the vehicle based on the following analysis:

> Here in this case, the facts and circumstances indicated that Officer Reid lacked an articulate suspicion when he conducted a search on McFadden's automobile. When the officer first spotted McFadden and McFadden was alone, was exiting his vehicle. This is contrary to the report which Reid was responding to, that three men were standing together on the street. Reid's cause for suspicion was further negated by the fact that the search of McFadden failed to produce a gun.
>
> Further, there was no testimony suggesting that McFadden was behaving in a suspicious manner. Although McFadden's blue clothing was arguably dark, the fact that Reid neglected to testify about the shoebox's location within the opaque bag also counts against his credibility. Under the totality of the circumstances, Officer Reid did not have an articulate suspicion that the defendant was engaged in criminal activity at the time of the stop. McFadden was spotted alone and not with two other individuals. And Officer Reid's search of McFadden failed to discover any guns.
>
> Additionally, Officer Reid's testimony regarding his plain view of the green leafy substance through the holes in the shoebox lacked plausibility. Not only was his testimony controverted by a fellow officer, Flynn, who testified that the shoebox was contained in a white opaque bag, but it is unlikely that the plainly incriminating nature of this evidence was apparent to the officer in the manner described.

Exhibits (A-5)

> Based upon a totality of all the circumstances, the Court grants the motion to suppress.

N.T. 2/19/15 at pages 2-3.

As noted at the outset, in addition to the contraband the search of the vehicle also resulted in the seizure of a black iPhone on November 1, 2013. That very same day, custody of the phone was surrendered to FBI and eleven days later Special Agent Jeffrey Hunter executed a probable-cause affidavit in support of a search warrant for the phone. In that affidavit, Agent Hunter recounted information that had been provided by several cooperating witnesses regarding the alleged drug activities of members of the McFadden family but noted that Talli McFadden had been arrested in California on June 23, 2011, remained in custody until the Spring of 2013 and was under federal supervised release until October 2013. Thus, the only current criminal activity allegedly involving Talli McFadden set forth in that affidavit was the arrest on November 1, 2013 by Officer Reid and the items of contraband that were found in the BMW. Additionally, the affidavit also claimed (contrary to what Judge Panepinto would later find) that Mr. McFadden "fit the description put out by police radio" and "that the officers observed in plain view what appeared to be marijuana contained in a shoebox in the back seat of TALLI's car." The affidavit then described the subsequent positive alert by the canine and the fact that a state search warrant was then obtained which resulted in the discovery, inter alia, of the iPhone.

A federal warrant authorizing the search the iPhone was thereafter issued but the device was supposedly locked so a court order was obtained compelling Apple to assist the agents in searching the phone. On November 14, 2014, Apple complied with the court order and later that month Agent Hunter submitted the results of the search to the Philadelphia Regional Forensics Laboratory. In a report prepared by that entity on December 3, 2014, the examiner stated that he

had managed to obtain information from the phone concerning contacts, call logs, messages, graphic files and videos files. The laboratory then forwarded to Agent Hunter two DVD's which contained the results of the forensic examination of the iPhone's contents.

## III. ARGUMENT

### A. The Search Of The Vehicle Was Unconstitutional Under Federal Law

The defense recognizes that a state-court ruling suppressing evidence is not binding on a federal court even where, as here, it is based upon a factual finding that the arresting officer's testimony lacked credibility. This legal principle is well-settled and was accurately summarized by Judge Diamond in United States v. Martinez, 982 F.Supp.2d 421 (E.D.Pa. 2013) as follows:

> The Parties correctly agree that federal law governs the admissibility of evidence in this case. United States v. Stiver, 9 F.3d 298, 300 (3d Cir. 1993) ('[E]vidence obtained in accordance with federal law is admissible in federal court – even though it was obtained by state officers in violation of state law') (quoting from United States v. Rickus, 737 F.2d 360, 363-64 (3d Cir. 1984)); United States v. Clyburn, 24 F.3d 613, 616 (4th Cir. 1994) (federal, not state, law controls the admissibility of evidence in federal court); United States v. Pforzheimer, 826 F.2d 200, 204 (2d Cir. 1987) ('[E]vidence admissible under federal law cannot be excluded because it would be inadmissible under state law.' (internal citations omitted). '[T]he fact that the arrest, search, or seizure may have violated state law is irrelevant as long as the standards developed under the Federal Constitution were not offended.' United States v. Green, 178 F.3d 1099, 1105 (10th Cir. 1999).

Id. at 430. Thus, the question for this Court is whether the initial seizure of Mr. McFadden was illegal under the Fourth Amendment and if so what effect that illegality had upon the subsequent search of the vehicle pursuant to the state warrant.

While admittedly not binding here, there should be little doubt that Judge Panepinto was absolutely correct when he concluded that Officer Reid lacked sufficient grounds to stop and detain Mr. McFadden based upon the information transmitted in the radio call. There is nothing

in the record concerning the source of the gun-possession allegation that was the subject of the radio call so at this point it appears to have been an anonymous tip from some unknown individual. In Florida v. J.L., 529 U.S. 266 (2000), the Supreme Court considered a case in which an unknown caller advised the police "that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun." Id. at 268. Upon arriving at the bus stop shortly after receiving the police radio call, the officers saw three black males one of whom was wearing a plaid shirt. Although the officers observed nothing which would lead them to believe that any of the three males were involved in illegal activity, they approached the one who was wearing the plaid shirt, frisked him and found a gun. The search was held unlawful by the Florida Supreme Court under Terry v. Ohio, 392 U.S. 1 (1968) and the state appealed.

In a unanimous opinion, the Supreme Court held that the anonymous tip lacked the type of reliability that would give rise to reasonable suspicion under Terry and therefore the stop and ensuing search were illegal. As the Supreme Court put the matter, "[a]ll the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L." Id. at 271. The Supreme Court also rejected the argument that the tip was reliable because "the suspect's visible attributes proved accurate: There really was a young black male wearing a plaid shirt at the bus stop." Id. According to the Supreme Court:

> An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion at issue here requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.

Id. at 272. The Supreme Court also rejected the state's invitation to create a so-called "firearm

exception" to Terry in which the requirement of "pre-search reliability" would be relaxed when the allegation is that the defendant possessed a gun; reasoning that "[s]uch an exception would enable any person seeking to harass another to set in motion an intrusive, embarrassing police search of the targeted person simply by placing an anonymous call falsely reporting the target's unlawful carriage of a gun." Id.

Application of these principles to this case yields but one conclusion; Judge Panepinto was correct when he held that Officer Reid lacked sufficient grounds to conduct a Terry stop. Like the situation in J.L., all the officer had was a description of "visible attributes" (in this case a black male wearing dark clothing) and nothing beyond that which would have suggested that the allegation that the male possessed a gun was reliable. In fact, everything that Officer Reid saw when he first encountered Mr. McFadden undercut the reliability of the tip. Mr. McFadden was seen exiting a car rather than standing on the corner in the company of two other males and he displayed neither nervousness nor apprehension when he was approached by the police and then frisked for weapons. To the extent that there was any question concerning the validity of the stop, it was plainly extinguished when that frisk failed to uncover the presence of a firearm or any dangerous weapon or device. Accordingly, Mr. McFadden's continued detention after the frisk was most certainly unconstitutional and became even more so when it was prolonged so that Officer Reid could inspect the vehicle that Mr. McFadden was operating.

As for Judge Panepinto's finding that Officer Reid's testimony that the marijuana was in plain view was not credible, again we recognize that this Court is not bound by that finding but its accuracy is unassailable. Officer Reid claimed to have made his plain-view observations from the driver's side of the vehicle and denied that the shoebox was inside of an opaque plastic bag. This testimony was rightly rejected because it was flatly contradicted by the testimony of another

police officer who stated under oath that the box was in an opaque bag, that he saw only one rather than two holes, and that what he was able to see was from an opening in the bag that was visible from the passenger side of the BMW rather than the driver's side where Officer Reid claimed to have made his observations. Perhaps most telling, on questioning by the prosecutor no testimony was ever elicited from Officer Flynn that he saw any green leafy substance through the one hole in the box that he observed. Put bluntly and directly, Officer's Reid's testimony that the marijuana was in plain view was not credible and hence could not supply any valid basis to search Mr. McFadden's vehicle.

That only leaves for discussion the question of what effect the positive canine alert had on the validity of the warrant that was obtained by the police. While we recognize, of course, that the Supreme Court has held that a canine sniff is not a search under the Fourth Amendment and thus need not be supported by reasonable suspicion, Illinois Caballes, 543 U.S. 405 (2005), that rule does not apply when an unlawful detention is prolonged so that the canine sniff can be performed. Indeed, the Supreme Court made this very point in Caballes when it stated:

> A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission. In an earlier case involving a dog sniff that occurred during an unreasonably prolonged traffic stop, the Illinois Supreme Court held that use of the dog and the subsequent discovery of contraband were the product of an unconstitutional seizure. People v. Cox, 782 N.E.2d 275 (2002). We may assume that a similar result would be warranted in this case if the dog sniff had been conducted while respondent was being unlawfully detained.

Id. at 407-08. Here, Officer Reid testified at the suppression hearing that after he frisked Mr. McFadden he had another officer detain him so that he could inspect the vehicle. See N.T. 2/17/15 at page 6 ("Upon stopping this defendant based off the nature of the radio call, he was stopped. He was cooperative. He didn't resist in any way. I stopped him. I had another brother

officer come down, detain him, and I walked over to the BMW I saw him exit"). There was nothing at all to suggest that Mr. McFadden was in possession of anything illegal at the point that Officer Reid directed his fellow officer to "detain him" and accordingly he was being unlawfully seized at the time the dog sniff was conducted. It too was therefore unconstitutional and could not provide a valid basis for the issuance of a warrant.

B. The State And Federal Search Warrants Were Invalid

The law governing the validity of search warrants which contain factual recitations concerning illegally obtained evidence is also well-established. The lead case is Murray v. United States, 487 U.S. 533 (1988) and it involved a situation in which the police illegally entered upon private property and observed what they believed to be contraband. After the illegal entry, a search warrant for the same property was obtained pursuant to which the items of contraband that were observed during the unlawful entry were seized. The probable-cause affidavit that was submitted in support of the warrant, however, made no reference to the prior illegal entry onto the premises nor the items of contraband that were observed at that time. The Supreme Court applied what is referred to as the independent source doctrine which provides that a search that is truly independent of the initial illegality will be upheld if (and only if) "the decision to seek the warrant" was not prompted by what the police "had seen during the initial entry[.]" Id. at 542. Additionally, the doctrine does not apply "if information obtained during the initial [unlawful] entry was presented to the Magistrate and affected his decision to issue the warrant." Id. Put simply, the question is whether the warrant would have been sought by the police or issued by a judge regardless of the unconstitutional activity which preceded its issuance.

Application of these principles to the state search warrant is straightforward and requires little discussion. First and foremost, Officer Reid testified at the suppression hearing that it was

the positive canine alert which prompted the decision to seek the warrant. See N.T. 2/17/15 at page 8 ("Noticing that [the rejected plain-view testimony], I did call for a K-9. P.O. Corporal, I believe his name is, and his dog did come out, and we did get a positive result for a narcotics. The vehicle was subsequently held for a search warrant at that point"). Since the positive canine alert occurred during the course of what was an unlawful seizure and prompted the police to seek the warrant, the independent source doctrine does not apply. Moreover, the results of the canine sniff provided the basis for the state issuing authority to find probable cause and accordingly the doctrine is inapplicable for this additional reason.

The federal search warrant for the iPhone also makes reference to the same facts that were cited in support of the state warrant and thus it too suffers from the same constitutional deficiencies that invalidate the latter document. Once the rejected plain-view testimony, canine alert, and description of the contraband that was found during the state search are excised from the federal probable-cause affidavit, there are no facts averred which would give rise to probable cause to believe that Mr. McFadden was involved at that time in the distribution of marijuana or any other controlled substance. Indeed, according to the federal affidavit Mr. McFadden was in custody from June of 2011 to the Spring of 2013 and subject to federal supervised release until October of that year. The only evidence recited in the affidavit that would have supported the conclusion that he was engaging in narcotics distribution on November 12, 2013 was the illegal search of his vehicle eleven days earlier. Accordingly, because the illegal search of the vehicle was presented to the magistrate and provided the basis for a finding of probable cause, the search of the iPhone pursuant to the federal warrant was unconstitutional. See United States v. Herrold, 962 F.2d 1131, 1141-42 (3d Cir. 1992) ("[I]f the application contains probable cause apart from the improper information, then the warrant is lawful and the independent source doctrine applies,

providing that the officers were not prompted to obtain the warrant by what they observed during the initial entry").

The statement in Herrold that the independent source doctrine is inapplicable when the officers are "prompted to obtain the warrant by what they observed during the initial entry" is also implicated with respect to the federal warrant. Although there is no testimony at this point from Agent Hunter that the discovery of the iPhone on November 1, 2013 "prompted" him to seek the federal warrant eleven days later, that conclusion is inescapable. Prior to its discovery by local police, Agent Hunter had no knowledge of the phone's existence and his possession of that item was solely the product of the search of the BMW by the local authorities. He could not, therefore, have decided to seek a warrant to search the phone for a reason that is independent of or unconnected to the illegal state search because that same search is the event which brought the phone to his attention and into his possession in the first place. Nor is this a case in which the phone could be reseized by the federal government lawfully (and hence independent of the state seizure) because the phone never left the possession of the authorities and the federal warrant only authorized the seizure of information that was stored on the phone rather than the device itself. Murray, 487 U.S. at 542 ("So long as the later, lawful seizure is genuinely independent of an earlier, tainted one (which may well be difficult to establish where the seized goods are kept in the police's possession) there is no reason why the independent source doctrine should not apply"); Herrold, 962 F.2d at 1143 ("[W]e see no reason not to treat the gun as also being seized pursuant to the search warrant which specifically authorized the seizure of 'firearms of any type'").

The upshot of this analysis is that the independent source doctrine has no application to this case and therefore the two search warrants do not render the evidence discovered during the

search of the BMW and then the iPhone admissible. The iPhone was itself seized illegally and neither its transfer to federal custody nor the search of its contents pursuant to the warrant are events which severed the connection to the unlawful search of the vehicle. The fruits of the two searches are thus inadmissible at trial and this would include "derivative evidence, both tangible and testimonial, that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search, up to the point at which the connection with the unlawful search becomes 'so attenuated as to dissipate the taint.'" Murray, 487 U.S. at 536-37 (quoting from Nardone v. United States, 308 U.S. 338, 341 (1939)).

## IV. CONCLUSION

For any or all of the foregoing reasons, Talli McFadden requests the Court to grant him an evidentiary hearing on this motion and at the conclusion thereof enter an order suppressing the evidence that was discovered during the search of his vehicle and all evidence derived from the search of his iPhone by the federal government.

Respectfully submitted,

Date: 7/15/16

/s/ Dennis J. Cogan
Dennis J. Cogan
2000 Market Street
Philadelphia, PA 19102
(215) 545-2400

/s/ Christopher Warren
Christopher D. Warren
1500 Walnut Street
Philadelphia, PA 19102
(215) 546-3750

## CERTIFICATE OF SERVICE

I, Christopher D. Warren, hereby certify that on this 15th day of June 2016, I caused a true and correct copy of the foregoing Motion to Suppress Evidence and Memorandum in Support of Motion to Suppress Evidence to be served upon the following person by electronic transmission:

Karen S. Marston, AUSA
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

/s/ Christopher Warren
Christopher D. Warren

Exhibits (E)

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 15-376-3** |
| **TALLI MCFADDEN** | : | |

**ORDER**

AND NOW, this day of , 2016, upon consideration of Defendant Talli McFadden's Motion to Suppress Evidence, docket no. 224, and the government's response thereto, it is hereby

ORDERED

that the motion to suppress evidence from the search of Talli McFadden's vehicle on October 31, 2013, and the subsequent search of Talli McFadden's iPhone (Docket No. 13-1288) obtained during Talli McFadden's arrest on October 31, 2013 is DENIED as moot; and that the motion to suppress any derivative evidence is DENIED.

BY THE COURT:

HONORABLE GENE E.K. PRATTER
*Judge, United States District Court*

Exhibits (E-1)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 15-376-3 |
| TALLI MCFADDEN | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S**
**<u>MOTION TO SUPPRESS EVIDENCE</u>**

The United States of America, by its attorneys, Zane David Memeger, United States Attorney for the Eastern District of Pennsylvania, and Karen S. Marston, Assistant United States Attorney for the District, respectfully requests that defendant Talli McFadden's Motion to Suppress Evidence be denied.

## I. BACKGROUND

On May 25, 2016, a federal grand jury returned a superseding indictment charging defendants Tyron McFadden, Talli McFadden, Tedkieya McFadden, Jamel Warren, Corey Munford, Johnny Beamon, Kwasi Payne, Brandon Mayes, Jimmie Young, together with Theodore McFadden and Lawrence Jackson and others known and unknown with, from in or about September 2009 through on or about October 21, 2015, conspiring to knowingly and intentionally distribute controlled substances, including five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, and 1000 kilograms or more of a mixture and substance containing a detectable amount of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 846, 841(a)(1). In addition, defendants Tyron McFadden, Talli McFadden, Tedkieya McFadden, Jamel Warren, Corey Munford, Johnny Beamon, Jimmie Young, together with Theodore McFadden and

Lawrence Jackson and others known and unknown, were charged with conspiring to commit money laundering in violation of Title 18, United States Code, Section 1956(h) between September 2009 and October 21, 2015. Defendant Talli McFadden is also charged with aiding and abetting the possession with intent to distribute approximately 60 pounds of marijuana on or about June 22, 2011, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(D) and Title 18, United States Code, Section 2 (Count 8); and aiding and abetting the possession with intent to distribute 500 grams or more of cocaine from in or about July 2015 through on or about August 3, 2015, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B) and Title 18, United States Code, Section 2 (Count 11). Further, the superseding indictment also charged certain other defendants with various substantive drug offenses.

Defendant McFadden was arraigned on the charges in the superseding indictment on June 23, 2016, and trial is scheduled to begin for all defendants on October 4, 2016.

On July 15, 2016, defendant filed a motion to suppress evidence recovered during a search of Talli McFadden's vehicle and then the subsequent arrest of Talli McFadden by the Philadelphia Police Department on October 31, 2013. During the arrest of Talli McFadden an Apple iPhone was seized and placed into evidence. On November 12, 2013, the Federal Bureau of Investigation ("FBI") obtained a federal search warrant for Talli' McFadden's iPhone (Docket No. 13-1288-M).

After obtaining the federal search warrant, the FBI attempted to search Talli McFadden's iPhone, however, was unsuccessful because the phone was locked. Subsequently, a court order was obtained directing Apple to assist law enforcement with the search of the iPhone. On October 24, 2014, Apple complied with the court order and returned a thumb drive with search results to the FBI. On November 25, 2014, FBI SA Jeffrey Hunter submitted the Apple thumb

Exhibits (E-3)



~~drive to the RCFL to transfer the search results from Apple to a data disc format. On December 9, 2014, the data disc results were placed into evidence.~~ Subsequently, the data disc results from iPhone recovered from Talli McFadden on October 31, 2013 were turned over in the discovery for this case.

## II. ARGUMENT

Talli McFadden moves to suppress direct and derivative evidence obtained during the search of his vehicle and his subsequent arrest on October 31, 2013. Def.'s Mot. at 2.[1] Talli McFadden's motion, however, fails to identify *any* derivative evidence that was allegedly derived from the search of his vehicle or the search of his iPhone pursuant to the federal search warrant.

The government does not intend to introduce any evidence from the search of Talli McFadden's vehicle by the Philadelphia Police Department on October 31, 2013, nor does the government intend to introduce any evidence from the search of Talli McFadden's iPhone (Docket No. 13-1288-M) during its case-in-chief. As such, Talli McFadden's motion to suppress should be denied as moot. Since Talli McFadden has failed to identify any specific derivative evidence that was allegedly obtained during the search of his vehicle or the search of his iPhone, Talli McFadden's motion to suppress derivative evidence should be denied.[2]

WHEREFORE, the United States respectfully requests that the Court deny as moot Talli McFadden's motion to suppress evidence from the search of Talli McFadden's vehicle on

---

1 Citations are to the pagination created by the Electronic Case Filing system when the motion was filed.

2 Without knowing what evidence Talli McFadden alleges was derived from the search of his vehicle or the search of his iPhone, the government cannot respond. It may very well be that any derivative evidence (if any even exists) that Talli McFadden alleges was obtained was actually obtained independently from this search and arrest of Talli McFadden on October 31, 2013, or is admissible pursuant to the attenuation exception.

Exhibits (E-4)

October 31, 2013, and the subsequent search of Talli McFadden's iPhone (Docket No. 13-1288) obtained during Talli McFadden's arrest on October 31, 2013. Further, the United States respectfully requests that the Court deny Talli McFadden's motion to suppress as it relates to any derivative evidence because the motion fails to specify any such derivative evidence.

Respectfully yours,

ZANE DAVID MEMEGER
United States Attorney

/s/
THOMAS R. PERRICONE
Narcotics, Chief

/s/
KAREN S. MARSTON
Assistant United States Attorney

Dated: July 29, 2016

Exhibits (E-5)

**CERTIFICATE OF SERVICE**

I hereby certify that I caused a copy of the Government's Response to Defendant's Motion to Suppress Evidence to be served by electronic filing:

Dennis J. Cogan, Esquire at cogan2128@aol.com
Christopher Duff Warren, Esquire at christopherduffwarren@hotmail.com
*Attorneys for Defendant Talli McFadden*

/s/
Karen S. Marston
Assistant United States Attorney

Dated: July 29, 2016

# Once crooked cop now testifying for former suspects

## Walker is a witness for those arrested by his narcotics squad



**Jeffrey Walker:** Former officer who pleaded guilty to corruption charges in 2014.

By Mark Fazlollah
*STAFF WRITER*

HIS NARCOTICS squad framed people with perjured testimony and bogus warrants and ultimately became a unit of thieves, stealing more than $1 million from drug dealers, former Philadelphia Police Officer Jeffrey Walker testified Thursday in his new role as witness for the wrongly arrested.

In a highly unusual public deposition in a federal courtroom, Walker was a key witness for scores of former suspects arrested by Walker's unit who are now seeking restitution from the city.

"Whether you believe it or not, it's true," Walker told seven plaintiffs' lawyers and a bevy of attorneys representing the city and six current and former police officers who are being sued in more than 100 cases dating back to 2012.

Walker has said he feared for his safety, and U.S. District Judge Paul S. Diamond allowed his courtroom to be used as a secure site for the deposition, continuing Friday.

The seven plaintiffs' lawyers represent what Diamond has designated as "bellwether cases," the leadoff batters for the larger group of suits. The city recently settled the first of the bellwether cases for $625,000.

Walker pleaded guilty in 2014 to federal corruption charges after he was caught stealing money in an FBI string. He then testified as a government witness against his six colleagues at trial in May 2015.

The six officers — Thomas Liciardello, Brian Reynolds, Michael Spicer, Perry Betts, Linwood Norman and John Speiser — all were acquitted.

Walker was sentenced to 42 months in prison. The six officers were given their badges back after their acquittals.

With the exception of Betts, who has retired, all the acquitted officers attended the first day of Walker's deposition as spectators. Four were in uniform.

Much of the information Walker discussed in front of his former colleagues was a repeat of his testimony in last year's criminal trial.

As in the criminal trial, Walker said he and Norman stole three kilos of cocaine from one dealer. Walker said he eventually got $17,000 for his share of the dope.

**"In my opinion, Jeffrey Walker has proven himself to be a liar, a thief and disgrace to the badge. His testimony was worthless."**

— MICHAEL DIAMONDSTEIN, *Lawyer who defended Officer John Speiser.*

Norman declined to comment about Walker's statements, as did the other officers who attended the first day of the deposition.

The lawyers for the city and police said they could not make any comment because the lawsuit litigation was ongoing.

But one of the defense attorneys from the officers' criminal trial lashed out at Walker when told about the deposition.

"In my opinion, Jeffrey Walker has proven himself to be a liar, a thief and disgrace to the badge," said Michael J. Diamondstein, who defended Officer John Speiser. "His testimony was worthless."

During the deposition, Walker minutely dissected search warrants and other paperwork the plaintiffs' lawyers presented to him. In one case, he said, based on the paperwork, the suspect had been wrongly convicted.

So far, the city's District Attorney's Office and the courts have agreed to dismiss charges against some 700 suspects who were arrested by Walker and the six others.

After their criminal charges were dismissed, many of those individuals sued the city. Legal experts say those lawsuits are likely to drag on for years. ■

✉ mfazlollah@phillynews.com

# Constitutional right to his passwords?



**Francis Rawls:** Former police sergeant in jail

**By Chris Palmer**
*STAFF WRITER*

IF POLICE THINK someone has child pornography on his computer, should investigators be able to force him to provide his passwords — or would that violate his constitutional right against self-incrimination?

That issue was at the heart of an appellate hearing Wednesday in federal court in Philadelphia in the case of Francis Rawls, a former Philadelphia police sergeant who has not been charged with a crime but who has been in custody for nearly a year in contempt of court for failing to unlock his encrypted electronic devices.

The case has attracted national attention from prosecutors, defense attorneys, and legal advocates for its potential ramifications on fundamental concepts including privacy, self-incrimination, and unreasonable search and seizure.

And as three appellate judges on Wednesday probed the positions of government lawyers and Rawls' defense team, some of their questions suggested that they, too, were grappling with the complicated matters at the center of the case.

"Are you asking us to ignore the Fourth Amendment?" asked Judge Thomas I. Vanaskie of the U.S. Court of Appeals for the Third Circuit.

It was one of two amendments the judges regularly referenced during the hearing. The other was the Fifth Amendment, which Rawls' attorneys believe protects his right to keep his passwords to himself.

The case began in March 2015, when detectives with the Delaware County District Attorney's Office identified him as a suspect in an investigation of a website called Freenet, according to court documents.

The site allegedly allowed users to share child pornography, and investigators said data showed that devices owned by Rawls — referred to as "John Doe" in the documents — had been routing or requesting such files.

But after authorities seized electronic devices from Rawls' home — including an iPhone, an Apple Mac Pro computer, and two external hard drives — they were unable to unlock the hard drives, which also were encrypt-

*See* **RAWLS** *Page 19*





**RAWLS**
*Continued from Page 7*

ed, documents say. The labeling of some files caused investigators to believe that the hard drives contained thousands of examples of child pornography, the documents say.

Rawls later was ordered to give authorities the passwords to the hard drives, but said he couldn't remember them.

On Sept. 30, 2015, a federal judge — who did not believe Rawls' explanation — found him in contempt of court and ordered him taken into custody, according to court documents. The next month, Rawls was fired from the Police Department.

Nathan Judish, an assistant U.S. attorney, argued Wednesday that a computer password was like a key to a safe, which authorities can force suspects to turn over if police already know what's inside.

But Rawls' attorney, Keith M. Donoghue, argued that investigators have not sufficiently proven that Rawls has specific material on his hard drives. Even if they had, Donoghue said, a password is not the same a physical key, because providing the password to police would be like being forced to provide self-incriminating testimony.

"It's a memorized security code that exists in his own mind, and therefore is protected by the Fifth Amendment," Donoghue said.

The judges — Vanaskie, Kent A. Jordan, and Richard L. Nygaard — challenged attorneys for both sides on their positions, as well as Mark T. Rumold, a lawyer for the Electronic Frontier Foundation, who supported Rawls' defense.

At times, the jurists questioned whether a mandated password disclosure could lead to other issues, such as finding evidence of different crimes on the unlocked device. That concern prompted Vanaskie's question about whether a Fourth Amendment violation against unreasonable searches and seizures could result from being forced to hand over a password.

Attorneys for both sides declined to comment after the hearing, and the judges did not offer a ruling or a time frame for when they would.

Rawls did not attend the hearing. He remained in custody at the Philadelphia Federal Detention Center, according to prison records. ■

cpalmer@phillynews.com
215-854-2817 @cs_palmer

**DO NOT CALL LIST**

1. Officer Anthony Abrams
2. Officer Hashaam Choudri
3. Officer Stanley Davis
4. Officer Robert Esack
5. Officer Emmanuel Folly
6. Officer Reginald Graham
7. Officer Shawn Hall
8. Officer Nicholas Harper
9. Sgt. Michael Kennedy
10. Officer Kevin Klein
11. Officer Deric Lewis
12. Cpl. Eric Lindler
13. Officer Allen Logan
14. Officer Michael Long
15. Officer Antonio Mayhew
16. Officer Alex McAdams
17. Lt. Anthony McFadden
18. Detective Phillip Nordo
19. Officer Angel Ortiz
20. Officer Ryan Pownall
21. Sgt. Sheila Pressley
22. Officer Angelo Romero
23. Officer Ross Scott

24. Sgt. Brian Smith
25. Officer Gerald Smith
26. Officer Eric Snell
27. Officer Adam Soto
28. Sgt. Michael Spicer
29. Officer Sequeta Williams

February 14, 2018

# Defense lawyers outraged over secret list of bad cops

By Chris Palmer, Craig R. McCoy and Mark Fazlollah
*STAFF WRITERS*



**District Attorney Larry Krasner** will have to deal with the fallout of the internal list created under former DA Seth Williams.

JESSICA GRIFFIN / Staff Photographer

THE REVELATION that the Philadelphia District Attorney's Office has for months maintained a secret list of suspect police officers elicited outrage as well as uncertainty among defense lawyers Tuesday.

One attorney said he was never told that a detective involved in his client's homicide case, Detective Philip Nordo, had been placed on the roster. Nordo's inclusion was confirmed by sources Tuesday.

Other defense lawyers said they were outraged that prosecutors had not shared the list, and some speculated that confirmation of its existence — first reported by the Inquirer and Daily News on Tuesday — could lead lawyers to file petitions asking for hundreds of old criminal cases to be reviewed or tossed out.

"That's fair game for any lawyer who represents any client in the city of Philadelphia," said defense attorney Guy Sciolla.

The full extent of fallout was likely to take months or longer to determine. District Attorney Larry Krasner has said his office would need three months to develop a comprehensive plan for addressing problem cops and their testimony.

Krasner said Tuesday that he would not comment on whether Nordo was on the list of the current and former two dozen tainted officers, saying he wanted to complete his own review of the list before releasing any names.

City prosecutors under former District Attorney Seth Williams created the internal list as a way to alert frontline prosecutors to potentially untrustworthy officers to trigger a debate about using their testimony. He said he is not accepting the list from his predecessor's team as drafted by Williams' appointees because "their conclusions may not be ours."

If Krasner were to release such a list or add more officers to it, the change-minded prosecutor risks angering the police union or inviting a flood of lawsuits against officers branded by the District Attorney's Office as problematic. At the same time, prosecutors are bound to comply with long-established court doctrine requiring them to give defendants any information that might help their defense.

It all amounts to an early political and policy test for Krasner, who promised on the campaign trail to combat police misconduct as part of his mission to reform the criminal justice system.

## Homicide case

Complications can be seen in the case of Darnell Powell, who was charged with murder in 2015 and remains behind bars awaiting trial.

The case was built, at least in part, by Nordo, who later was accused of repeatedly depositing money into the prison account of a key witness against Powell without disclosing the transactions.

Nordo was benched and later fired after the department said he had engaged in misconduct. Two sources said he also was then placed onto the list of some two dozen potentially tainted officers whose testimony could not be used without permission from high-ranking prosecutors. Nordo declined comment Tuesday.

Nordo, 51, worked as a homicide detective from 2009 until his dismissal last year. He routinely carried a heavy caseload, testifying in scores of cases and pulling in overtime pay nearly equal to his $82,000 salary. Before that, he worked in the busy East Detective Division and was a street cop in North Philadelphia's 23rd District. He joined the force 20 years ago. Before

*See* **LIST** *Page 15*

He stated that he owned a mobile, seasonal water ice business since 2006 (CC Water Ice). He noted that he also owned a cleaning service (TNT Platinum) that was started in 2009. He further indicated that he owned and operated "Baby Love Entertainment." This venture was an entertainment business and the defendant reported that he published books, including his own book entitled, "His Blood, My Sweat, Her Tears."[26] The businesses were all operated in Philadelphia.

224. The defendant's future employment goal is to publish a magazine and attempt to expand his businesses.

**Financial Condition: Ability to Pay**

225. The defendant completed a personal financial statement dated February 22, 2017. The defendant reported no assets. The defendant reported no checking or savings accounts, he does not own any real estate, and he does not own a motor vehicle.

226. According to a credit report dated February 23, 2017, the defendant has account balances totaling $73,961.00. The report reflected collection accounts with AT&T ($769.00), Enterprise Rental Car ($324.00), BMW Financial ($47,124.00), Midland Funding LLC ($2,409.00), Portfolio Recovery ($595.00), the Navy Federal Credit Union ($13,578.00), Trumark Federal Credit Union ($1,220.00), and CBNA ($741.00).

227. An automated search of bankruptcy court records and other financial databases revealed no judgments or lien filings against the defendant.

228. A review of public records documents revealed a 2012 BMW 750 LXI and a 2012 Jeep Wrangler Unlimited Sahara registered to the defendant.

229. The defendant has retained counsel in this case.

230. Pursuant to USSG §5E1.2(a), the court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine. Due to the defendant's current detention, his inability to obtain gainful employment outside of the prison setting, and his lack of assets, the defendant does not currently have the ability to pay a fine within the guideline range.

231. If the defendant is incarcerated, payment on a fine or restitution can commence through the Bureau of Prisons Inmate Financial Responsibility Program. An inmate participating in this program will be able to contribute half of monthly prison work earnings, for every month of imprisonment served, toward any immediately due fine or restitution.

---

[26] Records verify that the defendant is the author of this book and was published by Baby Love Entertainment. Records indicate that the book is for sale online through Amazon and Barnes and Noble.

# CITY OF PHILADELPHIA

VENDOR NO. DATE 07/23/2015 NO. 174-05370

| VOUCHER NUMBER | PURCHASE ORDER NUMBER | DESCRIPTION | AMOUNT |
|---|---|---|---|
| RV01431399 | 15071601 | MISCELLANOUS<br>FUND SOURCE INDEX REFUND AMOUNT<br>080 6612 690500 891.00<br>TOTAL 891.00<br>RECEIPT # 3129516 | ******891.00<br><br>******891.00 |

FAMCK4 (06/2014)