IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| TALLI J. MCFADDEN, | : | |
| :--- | :--- | :--- |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 18-CV-3779 |
| | : | |
| APPLE INC., *et al.* | : | |
| Defendants. | : | |

MEMORANDUM

SÁNCHEZ, C.J.                                                                 SEPTEMBER 12, 2018

Plaintiff Talli J. McFadden filed this civil action against the City of Philadelphia, several police officers for the City, Apple Inc., and others, raising claims pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985, and state law based on his arrest and prosecution in state court for drug crimes. McFadden seeks to proceed *in forma pauperis*. For the following reasons, the Court will grant McFadden leave to proceed *in forma pauperis* and dismiss his Complaint.

I.  FACTS[1]

   A.  McFadden's Arrest and Prosecution in State Court

On October 31, 2013, McFadden was driving in Philadelphia when he was pulled over by a group of officers of the Philadelphia Police Department. According to McFadden, Officer Jason Reid exited the police vehicle "with his gun drawn screaming 'don't you move, put your hands up, now right now!' and demanding where's [sic] is the gun" even though McFadden was not in

---

[1] The following facts are taken from the Complaint, exhibits attached to the Complaint, and the public dockets for McFadden's related criminal proceeding.

1

possession of a gun. (Compl. ECF No. 2 at 5.)[2] The officers stopped McFadden, detained him, and searched him and his car.

After Officer Reid observed a white bag with an orange Nike shoe box in the back seat of the car, Officer Reid tightened the handcuffs that had been placed on McFadden and insisted that McFadden "tell him something or 'he's going to jail.'" (*Id.* at 6.) The officers pressed McFadden for information about drug trafficking and told him that he would be taken to jail and that his car would be seized from him. Officer Timothy Murphy asked McFadden his name and McFadden gave it. Police Officer Angel Ortiz demanded McFadden's cell phone. Officer Reid came over and "manhandled [McFadden] to take his cell phone" and, along with Officer Ortiz, pushed McFadden's head into the patrol car. (*Id.*) Officer Ortiz "manhandled" McFadden again when he was switched from the patrol car to the paddy wagon. (*Id.*) McFadden also alleges that his handcuffs were placed on tightly to the point where marks were visible on his wrists.

McFadden was charged with various drug crimes and arraigned at the police station. (*Id.*); *see also Commonwealth v. McFadden*, Docket No. MC-51-CR-0042344-2013 (Phila. Municipal Ct.). Additionally, Officer Murphy took $891.00 from McFadden and told him that he was noting it on a property receipt. On November 1, 2013, McFadden called his family to post bail. Someone posted bail, but McFadden's release was "delayed until the FBI came to the 15th District to recover his cell phone." (Compl. at 6.) The Complaint indicates that McFadden was held for a total of one day at that time. (*Id.* at 8.) Upon his release, McFadden was given a property receipt rather than his belongings.

On November 12, 2013, an FBI agent executed a search warrant on McFadden's cell phone, an Apple I-Phone. The next day, the phone was submitted to the FBI Regional Computer

---

[2] The Court adopts the pagination assigned to the Complaint by the Court's CM-ECF system.

Forensics Laboratory for analysis. In connection with the investigation, the FBI agent emailed an Apple employee named Joanne regarding the execution of the search warrant in accordance with a court order. On November 18, 2013, someone responded from the email address subpoenas@apple.com that an extraction date would be provided "once all approvals have been received." (*Id.* at 7 & 31.) The Complaint and exhibits attached thereto reflect that the phone could not be searched at that time because it was locked. McFadden alleges that he had to obtain counsel to defend against the charges and to get his car back.

In August of 2014, McFadden was at the Criminal Justice Center for a court appearance in connection with his criminal case, *see Commonwealth v. McFadden*, CP-51-CR-0006749-2014 (Phila. Ct. of Common Pleas), when Officer Ortiz saw him and told him that he was going to jail. McFadden also alleges that Officer Ortiz "strong armed" him in the hallway off the courthouse and took his cell phone (presumably the phone was given back to McFadden at some point, although this is unclear from the Complaint). (Compl. at 8.) When McFadden protested, Officer Ortiz allegedly told him to shut up and threatened to arrest him and search his cell phone. McFadden alleges that Officer Ortiz searched his cell phone and then tried to give it back, but that McFadden "refused to take it because he wanted his attorney to know what Officer Ortiz had done." (*Id.*) When the attorney arrived, Officer Ortiz contended that he gave the cell phone "to his friend." (*Id.*)

On October 24, 2014, the cell phone was sent to Apple, Inc. pursuant to a court order requiring Apple to assist law enforcement with a search of the phone. On December 9, 2014, the results were provided to the FBI. According to McFadden, Apple violated his rights because "the phone was sent 11 months after the warrant expired," which was "far outside the time permitted under the law for the off-site examination to take place." (*Id.* at 9.)

3

McFadden filed a motion to suppress in his state criminal proceeding, in which he argued that his arrest/detention and search of his car were unconstitutional. Apparently in relation to his those arguments, McFadden also alleges that Officer Ortiz was aware of exculpatory information on the evening of the arrest —October 31, 2013—because people on the streets were recording the arrest, yet Officer Ortiz and his colleagues failed to pass that information along to the District Attorney's Office or to the officer who prepared the search warrant for his car. (*Id.* at 10.) On February 17, 2015, the Honorable Paul P. Panepinto held a hearing on McFadden's motion to suppress. McFadden alleges that Officer Reid and possibly Officer Flynn gave false testimony at that hearing. Judge Panepinto granted the motion to suppress. On April 19, 2015, the charges against McFadden were nolle prossed. *See Commonwealth v. McFadden*, CP-51-CR-0006749-2014 (Phila. Ct. of Common Pleas). On June 15, 2015, McFadden's car was returned to him. His passport was returned to him the next month. Exhibits attached to the Complaint also reflect that $891.00 seized from McFadden on the evening of his arrest was returned to him on July 23, 2015. (Compl. at 59.)

### B.   McFadden's Prosecution in Federal Court

McFadden was subsequently indicted for various federal drug crimes. *See United States v. McFadden*, Crim. A. No. 15-cr-376-3 (E.D. Pa.). On July 15, 2016, McFadden filed a motion in his federal case to suppress evidence recovered in connection with the October 31, 2013 search of his car and his arrest, including evidence obtained from his cell phone. The motion was based on the same arguments raised in state court. (*See* Compl. at 33, Ex. D-1 (stating that "the legality of the search that is the subject of this motion was previously litigated in the Philadelphia Court of Common Pleas at a suppression hearing that was conducted before the Honorable Paul P. Panepinto on February 17, 2015").) In an Order entered on the docket November 22, 2016, the

4

Honorable Gene E.K. Pratter, who is presiding over McFadden's criminal case, denied the motion without prejudice because McFadden failed to identify the evidence he sought to suppress and because the Government stated that it would not introduce any direct or derivative evidence from the searches at trial. *United States v. McFadden*, Crim. A. No. 15-cr-376-3 (E.D. Pa.) (ECF No. 282). On February 15, 2017, McFadden entered a guilty plea. His sentencing hearing has been set for September 26, 2018.

### C. "Do Not Call" List

McFadden alleges that in October of 2017, he was communicating with former District Attorney Seth Williams and was informed that a list of "dirty cops" would be "coming out very soon." (Compl. at 11.) Local media subsequently printed articles about a list created by the District Attorney's Office of police officers whom they would not call as witnesses, which included Officer Ortiz. (*Id.* at 55.) McFadden alleges that law enforcement "at the highest levels" was aware of civil rights violations caused by these officers. (*Id.* at 11.)

### D. McFadden's Claims

Based on the above allegation, McFadden's Complaint raises claims pursuant to § 1983, § 1985(3), and state law against Apple, Inc., various employees and email addresses of Apple, several police officers for the City of Philadelphia, and the City of Philadelphia. His claims relate to his arrest and detention on October 31, 2013, the search of his car on that date, the search of his I-Phone, and his prosecution in state court. He also raises excessive force and assault claims based on the events that occurred during the evening of his arrest. McFadden primarily seeks damages, unspecified injunctive relief, and a declaration that his rights were violated.

5

## II. STANDARD OF REVIEW

The Court grants McFadden leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[3] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* Additionally, the Court may dismiss claims based on an affirmative defense if the affirmative defense is obvious from the face of the pleading. *See Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006); *cf. Ball v. Famiglio*, 726 F.3d 448, 459 (3d Cir. 2013), *abrogated on other grounds by*, *Coleman v. Tollefson*, 135 S. Ct. 1759, 1763 (2015). As McFadden is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

### A. Federal Claims

Pennsylvania's two-year statute of limitations period applies to McFadden's § 1983 and § 1985 claims. *See* 42 Pa. Cons. Stat. § 5524; *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 80 (3d Cir. 1989). "[T]he statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes

---

[3] However, as McFadden is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

6

detained pursuant to legal process." *Wallace*, 549 U.S. at 397. Otherwise, the limitations period governing Fourth Amendment claims related to searches, seizures, and excessive force accrue at the time of the search, seizure, or use of force in question because at that time, "the plaintiff knew or should have known of the injury upon which [his] action is based." *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998); *see also Whitenight v. Commonwealth of Pennsylvania State Police*, 674 F. App'x 142, 144 (3d Cir. 2017) (per curiam); *Woodson v. Payton*, 503 F. App'x 110, 112 (3d Cir. 2012). The two-year statute of limitations on a malicious prosecution claim accrues when the criminal proceeding in question terminates in the plaintiff's favor, because that is when the cause of action is complete. *See Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010); *Rose v. Bartle*, 871 F.2d 331, 349 (3d Cir. 1989). Pursuant to the prison mailbox rule, McFadden's Complaint was considered filed on the date that he delivered it to prison authorities to be mailed to the Court. *See Houston v. Lack*, 487 U.S. 266, 276 (1988).

The Complaint does not indicate when it was delivered for mailing- -and the absence of a post mark suggests it may not have been mailed—so the Court will use the date the Complaint was signed, August 29, 2018, as the filing date for purposes of this Memorandum. It is clear, however, from the Complaint that McFadden was aware of the events giving rise to his claims more than two years before he filed this lawsuit. McFadden was certainly aware of the amount of force used to arrest him and transport him at the time the force was applied on October 31, 2013 and November 1, 2013. His allegations also make clear that he was aware of the facts giving rise to his false arrest and illegal search claims on the same dates, as he repeatedly alleges that the events of that evening did not provide the Officers a reasonable basis to stop him or search his car. Furthermore, McFadden challenged the legality of his arrest and the search of his

7

phone and car in motions filed in his criminal cases more than two years before he initiated this case. Accordingly, he clearly knew that he had a basis for challenging his arrest, detention, and the search of his car and phone. The fact that he subsequently learned one of the police officers involved in his case had been named on the "do not call" list maintained by the District Attorney's Office does not change the fact that McFadden was well aware of a basis for his claims more than two years before he filed this lawsuit.[4] Finally, the charges against McFadden were nolle prossed in state court on April 19, 2015, so his malicious prosecution claims accrued at that time.[5] As McFadden was clearly well aware of the bases for his claims more than two years before he filed his Complaint, his claims are time-barred.

### B. State Claims

McFadden has also raised claims under state law, but there is no independent basis for jurisdiction over those claims under 28 U.S.C. § 1332(a).[6] That provision grants a district court

---

[4] Indeed, McFadden appears to have argued to the state court, through counsel, that the police officers were not testifying honestly with regard to the events giving rise to McFadden's arrest and detention. So, if the list is intended to reflect that Officer Ortiz could not be trusted, McFadden was already aware of that fact.

[5] McFadden indicates that he is bringing malicious prosecution claims based on charges that terminated in his favor, so the Court does not understand him to be challenging his federal prosecution. In any event, as McFadden pled guilty in the federal proceeding, if he were challenging that prosecution, his claims appear to be barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), by virtue of his guilty plea. Furthermore, McFadden has failed to state a § 1985 claim because he has not alleged the type of race or class based discrimination required to state a claim under that statute. *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997) ("[T]o state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." ); *see also Farber v. City of Paterson*, 440 F.3d 131, 136 (3d Cir. 2006).

[6] Because the Court is dismissing all of McFadden's federal claims, the Court declines to exercise supplemental jurisdiction over McFadden's state law claims. *See* 28 U.S.C. § 1367(c)(3) (stating that "district courts may decline to exercise supplemental jurisdiction over a

jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment." *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010). The domicile of a corporation is the state in which it is incorporated as well as the state in which it has its primary place of business. 28 U.S.C. § 1332(c)(1). Although McFadden has not clearly provided the citizenship for all of the parties, he and at least some of the Defendants are citizens of Pennsylvania. Accordingly, there is no basis for diversity jurisdiction over McFadden's state law claims.

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss McFadden's federal claims as time-barred, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and will dismiss his state law claims for lack of subject matter jurisdiction. McFadden will not be given leave to file an amended complaint in this case because amendment would be futile. McFadden's Motion for Counsel will be denied *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993). An appropriate Order follows.

BY THE COURT:

JUAN R. SÁNCHEZ, C.J.

---

claim . . . if . . . [it] has dismissed all claims over which it has original jurisdiction"); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (holding that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well").

9